## M. M. McCLINTOCK v. SOUTH PENN OIL CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY.

Argued October 19, 1891—Decided January 4, 1892.
[To be reported.] *

1. Whether the doctrine of mutuality as affecting the specific enforcement of contracts, has any proper place in cases arising under the statute of frauds, is a vexed question on which our decisions are not in harmony, and are badly in need of review; see Tripp v. Bishop, 56 Pa. 424; Meason v. Kaine, 63 Pa. 335; Sands v. Arthur, 84 Pa. 479; and the comment thereon in Reed on Stat. of Frauds, § 367 : Per Mr. Justice MITCHELL.

2. A contract for the sale of real estate, signed for the vendor by an agent not having written authority to sign, will have the same force and effect, under the statute of frauds, § 1, act of March 21, 1772, 1 Sm. L. 389, when ratified in writing by the vendor, as though signed by the agent in pursuance of lawful authority by writing; provided, the vendee has not repudiated it before such ratification.

(a) Without written authority, the agent of an equitable owner of land signed for his principal an agreement to transfer to another, for a specified consideration, the contract under which the principal held the land. Afterwards, the principal, at the request of the other party, executed a formal assignment written on the same sheet of paper with the agreement to transfer, and specifying the same consideration :

3. The assignment operated as a written ratification of the agreement executed by the agent, and took it out of the operation of the statute of frauds, notwithstanding the purchaser under said agreement refused to accept the assignment when afterwards tendered to him. The enforcement of the contract violated neither the letter nor the policy of the statute, all its objects having been secured.

4. The plaintiff, holding a contract for the purchase of land, sold it to the defendant by an executory agreement for a specified price. The defendant refused to take and pay for it, and it became forfeited by the non-payment to plaintiff's vendor of money falling due on it after such refusal. Such non-payment being the default of the defendant, the price defendant agreed to pay to plaintiff could be recovered notwithstanding the forfeiture.

Before STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

---

* Reported wholly by Mr. Jas. I. Brownson, Jr.

No. 50 October Term 1891, Sup. Ct.; court below, No. 341 February Term 1890, C. P.

On January 10, 1890, Mattie M. McClintock brought assumpsit against the South Penn Oil Company, filing a statement of claim, which, as afterwards amended, averred in substance as follows:

That on December 18, 1889, S. B. Donaldson, administrator d. b. n., c. t. a., of Richard Donaldson, deceased, agreed in writing, in consideration of one hundred and fifty dollars cash in hand paid to him, to sell and convey to the plaintiff a tract of land in Washington county, containing about two hundred and eleven acres, subject to a reservation of one sixteenth of the oil therein, for the price of fifty dollars per acre, payable one thousand dollars on January 1, 1890, one thousand dollars on delivery of deed on or before February 1, 1890, and the balance in annual payments to be secured by bond and mortgage. The agreement provided that time should be of the essence of the contract, and that if the one thousand dollars payable January 1, 1890, should not be paid on that day, the "option" should be null and void, and the one hundred and fifty dollars already paid should be forfeited; and that the contract should be subject to the approval of the Orphans' Court of Washington county.

That, on December 23, 1889, the plaintiff, by her authorized agent, Alexander McClintock, agreed to transfer said contract to the defendant company for the consideration of eleven hundred and fifty dollars, and at the request of the defendant the said agent indorsed thereon a receipt which was signed as follows:

"PITTSBURGH, Pa., December 23, 1889.

"Received of the South Penn Oil Company fifty dollars of the purchase money for the within contract. The balance to be paid by 26th, on making the necessary transfer, is to be eleven hundred dollars.

"MATTIE M. McCLINTOCK,
"By Alex. McClintock."

That, on December 26, 1889, the defendant indorsed on the said contract a formal transfer thereof, requesting said Alexander McClintock to have it duly executed and returned the

next day, promising thereupon to pay the remainder of the consideration, to wit eleven hundred dollars; that said transfer, as prepared by the defendant, was duly executed, reading as follows:

" For and in consideration of the sum of eleven hundred and fifty dollars ($1,150), to us in hand paid by the South Penn Oil Company, the receipt whereof is hereby acknowledged, we hereby sell, assign, and transfer unto the South Penn Oil Company, its successors and assigns, the within contract, and all our right, title, and estate in and to the same and arising thereunder, and all our right, title, and estate in and to the lands therein described.

" Witness our hands and seals this twenty-sixth day of December, A. D. 1889.

<blockquote>
" ALEX. McCLINTOCK,　　　(L. S.)<br>
" MATTIE M. McCLINTOCK,　　(L. S.) "
</blockquote>

[Here followed an acknowledgment by Mr. and Mrs. McClintock, in due form.]

That, with the said transfer, the defendant also gave the said Alexander McClintock a voucher for the money due, which was also properly signed.

That, on the next day, to wit, December 27, 1889, said Alexander McClintock returned to defendant company's office " and tendered to defendant the said Donaldson contract, with the said receipt and transfer indorsed thereon, as well as the said voucher; but the defendant refused to accept the same and to pay the balance of the contract price, to wit, eleven hundred dollars, unless the said Alexander McClintock would induce the said S. B. Donaldson to make certain alterations in the contract which the defendant desired."

That " the plaintiff endeavored to induce the said Donaldson to make the alterations desired by the defendant, but he refused to change the contract; the plaintiff then offered to return to said defendant company the sum of fifty dollars, which the said company had paid upon the contract, and requested the said company to cancel the assignment to it made upon the back of said lease, and to surrender all rights granted to it by the said agreement of sale; this the said company refused to do, and notified S. B. Donaldson, administrator of said Richard Donaldson, deceased, that the defendant company held

this option by assignment from the plaintiff; that, relying on the contract with defendant as above set forth, the plaintiff was not prepared to pay said Donaldson one thousand dollars, January 1, 1890, and under the terms of the said contract with said Donaldson forfeited her rights under the same and lost all the valuable rights she had acquired thereby."

The defendant having pleaded non assumpsit, the case was tried on December 3, 1890, when Alexander McClintock, the plaintiff's husband, testified on her behalf to the making of a bargain for the assignment of the Donaldson contract to the defendant, the writing and execution of the receipt and transfer indorsed thereon, and the subsequent refusal of the defendant to accept the transfer, substantially as averred in the statement of claim. The witness stated that the agreement to transfer the contract was made by him on December 23d, with T. E. Sumner and S. B. Hughes, at the office of the company in Pittsburgh, Sumner being, as he understood, an agent of the company, and Hughes its secretary; that after the witness signed the receipt indorsed on the Donaldson contract, it was left in defendant's possession until December 26th, when, in pursuance of an arrangement made on the 23d, the witness returned to the office and met Mr. Hughes and also Mr. Clark, the president of the company; that Mr. Hughes then telephoned for Mr. Thorp, the company's attorney, who came to the office and after examining the contract with Donaldson, wrote upon it the assignment which was afterwards executed by the witness and his wife, and Mr. Clark gave the witness a voucher for the consideration money, with instructions to have it signed by his wife and sign it himself, and to have the assignment executed and acknowledged by his wife and himself, and bring both papers back the next day; that the witness returned on the following day with the papers executed, and saw Mr. Hughes and Mr. Thorp, and was informed by Mr. Thorp that the company wanted the clause in regard to approval by the Orphans' Court, in the Donaldson contract, stricken out of it, and would not take it unless this was done; whereupon the witness offered to return the fifty dollars paid to him by the defendant if the assignment were erased or a re-assignment of the contract executed, making this offer to Mr. Thorp, to whom the witness had just been referred by Mr. Hughes, as authorized

### Statement of Facts.

to act for the company, but the offer was not accepted; that the witness and Mr. Thorp then went to see Mr. Donaldson to get him to modify the contract by striking out the clause objected to, but he refused to do this, and Mr. Thorp, for the defendant, then finally declined to accept the assignment. The witness testified further on cross-examination, as follows:

" Well, did you go to Mr. Donaldson the first of January and pay the thousand dollars? No, sir. According to your contract with Mr. Donaldson, there was one thousand dollars to be paid on the first day of January, 1890? Yes, sir. You didn't pay it? No, sir. Did you notify him you couldn't do it? I think so; I told him that I hadn't the money. Didn't you surrender it then? Why, according to the reading of the option, it's dead. Q. But didn't you give it up? A. I had to. . . . . Q. Well did you surrender it to Mr. Donaldson? A. No, sir. . . . . Q. After Mr. Thorp informed you finally on December 27th, that the company wouldn't consider further the taking of that contract from you, did you not then obtain a purchaser from Mr. Donaldson of this land, and receive from that purchaser the payment of a sum of money for your services, having surrendered your own right to Mr. Donaldson under your option?"

The purpose is: First, if Mr. McClintock, after he was notified that the company would not accept, surrendered his contract with Mr. Donaldson, and went so far as to obtain another purchaser to take his place, he was no longer in any position whatever to enforce the contract with the South Penn company in any shape. Also, for the purpose of showing matter in mitigation of any damages; because, if he received two hundred dollars for his right, or the surrender of his right to another purchaser, that two hundred dollars should go to relieve any damages he may have sustained.

Objected to, as incompetent and irrelevant, for the reason it is not offered to be shown this was obtained under the option in evidence, under which the plaintiff claims to recover, the witness having testified that the option expired on the first of January by its own limitation.

By the court: If this was after the first of January, we think it is not competent; if before, it is admitted; exception.[1]

The witness testified, further, that he had made four trips

Statement of Facts.

to Pittsburgh in connection with his negotiations with the defendant, at an expense of $1.70 for each trip.

The plaintiff, having taken the witness stand and been shown the Donaldson contract and the indorsements thereon, was asked:

" Q. I want to call your attention to the sale made there, the twenty-third of December, 1889, in this paper; did you authorize your husband to make that sale? Yes, sir."

Defendant's counsel: What is the purpose of this?

Plaintiff's counsel: The plaintiff offers to show a verbal contract made on December 23, 1889, and indorsed on the back of the option; that it was authorized by the plaintiff verbally, and afterwards ratified by her.

Objected to as a whole, in so far as it is an attempt to prove a parol authorization to make the contract evidenced by the paper of December 23d.

By the court: The offer is admitted, so far as it is necessary to show the character of the ratification claimed; exception.[2]

" Q. You executed this transfer here, before a justice of the peace? Yes, sir. At the time you signed that, and acknowledged it before the justice of the peace, were you informed of this writing dated December 23, 1889? Yes, sir. . . . . You then signed and acknowledged this paper, knowing that the contract price was one thousand one hundred fifty dollars, fifty dollars of which was paid? Yes, sir. That was the understanding on which you signed the contract? Yes, sir. Had you read that paper, dated December 23, 1889, at the time you acknowledged it? Yes, sir. You had read that? Yes, sir. Was there any other consideration moved you to sign that, except that paper dated December 23, 1889; was there anything else? No, sir. What did you sign and acknowledge that paper for; what was your purpose in signing it? Just to carry out that contract; that was all. As there expressed? Yes, sir."

Cross-examination: " Q. Prior to your signing and acknowledging that paper dated December 26th, that assignment of that date, had there been any writing whatever executed by you with reference to the sale of that option to this defendant company? No, sir. Prior to that, there was no written paper from you relating to this sale, this contract? No, sir."

The plaintiff then offered in evidence the contract between herself and Donaldson, with the indorsements thereon, and also the voucher mentioned in the testimony of Alexander Mc-Clintock, supra.

Defendant's counsel: We ask them to state the purpose of the offer of the assignment.

Plaintiff's counsel: For the purpose of showing a ratification and acceptance by Mrs. McClintock of the contract made by parol by her husband, and it, along with the option itself, to show a complete and valid transfer of the option to the South Penn Oil Company. Also, for the purpose of corroborating the testimony of Alex. McClintock.

Objected to by the defendant, for the reason that the testimony of the plaintiff distinctly shows that the paper purporting to be an assignment or transfer by Mrs. McClintock, dated December 26th, and acknowledged, was never accepted by the defendant company; and for the further reason that it is incompetent and irrelevant to show a ratification of the alleged previous parol contract; this objection being limited to the assignment or transfer referred to. .

By the court: Objection overruled; exception.[3]

The testimony for the defendant was to the effect that the bargain with Mr. McClintock for the purchase of the Donaldson contract was concluded late in the evening of December 23, 1889, after business hours, when all parties were in a hurry to get away; that neither Mr. Sumner nor Mr. Hughes examined the Donaldson contract more than to see that the option in it was still in force, and the purchase was expressly made conditional upon the examination and approval of the company's attorney; that immediately the next day, December 24th, the contract was submitted to Mr. Thorp, the attorney of the company, who advised the company as to the objectionable clause in it making the conveyance of the land subject to the approval of the Orphans' Court; that Mr. Thorp at once proceeded to Mr. Donaldson to endeavor to have the contract made absolute, and alone, and afterwards with Mr. McClintock, sought to have the change made; that on the 26th, when Mr. McClintock was in, believing that the desired change would yet be effected, Mr. Thorp indorsed on the contract the formal assignment and acknowledgment, that the transfer might be completed the next

Statement of Facts.

day; that the next day, the 27th, when Mr. McClintock returned with the assignment executed and acknowledged and the voucher signed, Mr. Donaldson finally declined to make the change, when Mr. Thorp, by direction of the company, refused to accept delivery of the assignment and declared the business at an end.

Both Mr. Hughes and Mr. Thorp, testifying for the defendant, denied that Mr. McClintock offered to return the fifty dollars paid him, if the company would cancel the assignment or re-assign the contract. The same witnesses testified, also, that on the 27th, before the business was finally broken off, they offered, for the company, to deposit eleven hundred dollars to the plaintiff's credit, to be paid over to her when a conveyance of the land should be obtained, and that Mr. McClintock declined the offer. Mr. McClintock denied that any such offer was made.

The defendant called S. B. Donaldson and made the following offers:

Was the value of this land any greater or less on the twenty-seventh of December, 1889, than it was on December 23, 1889? This offer bearing upon the question of the measure of damages which may be claimed by the other side in this case.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; offer overruled; exception.[4]

Was the value of the option held by Mr. McClintock under his contract, more or less on December 27, 1889, than it was on the 23d? As bearing on the measure of damages which the plaintiff may claim in this case.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[5]

State whether or not, a few days after January 1, 1890, and before Janury 10, 1890, the contract with Mr. McClintock having been forfeited, you did not make a sale of the same land, at a larger price per acre and reserving a larger royalty, to the Union Oil Company? As bearing on the measure of damages which the plaintiff may claim in this case.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[6]

Charge of Court below.

The testimony being closed, the court, McIlvaine, P. J., charged the jury in part as follows:

The first question of fact to be determined is this: Was there any contract made and fully consummated between the plaintiff and the defendant in this case? If you find there was not, you need go no further; for, on such finding your verdict would be for the defendant. [If, however, you find there was a contract between the plaintiff and the defendant, fully consummated, for the sale of the plaintiff's interest in the agreement she had with Mr. Donaldson, then the next question arises, was that agreement evidenced by a writing, signed and lawfully executed by the vendor, Mrs. McClintock, or was it simply a verbal contract of sale made by the company through its duly authorized agents and Alex. McClintock, verbally authorized by Mrs. McClintock, to act for her.] [8]

[If you find that the contract was a verbal one, fully consummated between the company and Alex. McClintock, the verbally appointed agent of Mrs. McClintock, and that the contract was not afterwards merged into or ratified by a written contract, by Mrs. McClintock lawfully executing a written assignment which was accepted by the company, then your verdict should be in favor of the plaintiff; and the damages she would be entitled to recover should be assessed at an amount sufficient to compensate her for the expenses she incurred, or which were incurred by her agent in her behalf, on the faith of the bargain.] [9]

[If you find that the contract of sale made by the parties was absolute and unconditional, and was reduced to writing, duly signed and lawfully executed by Mrs. McClintock, the vendor, and that the defendant company repudiated the contract, and she did not consent to this repudiation so as to rescind her contract, then she would be entitled to recover, and you should assess her damages at a sum equal to the unpaid purchase money.] [10]

Now, gentlemen, we do not intend or think it necessary to refer to the testimony of the witnesses; it has been commented on by the learned counsel for the plaintiff and defendant, and is fresh in your recollection. You will take it and give it a careful consideration, and find what facts it satisfactorily es-

Charge of Court below.

tablishes, and then apply the law which we have given you to those facts, and render a verdict accordingly.

The plaintiff asks us to charge you as follows:

1. That, even if Alex. McClintock, at the time he made the contract with the South Penn Oil Co., for the sale of the option on the Donaldson farm, had no written authority from his wife to make said contract, yet if they further find that in pursuance of an arrangement made with said company and before any rescission of the said contract by the said company, he procured a legal assignment of the said contract to it, such assignment would be a ratification of the said contract, binding upon the parties thereto as of its date, December 23, 1889.

Answer: That is affirmed.[11]

3. That it is not necessary that the contract should be signed by the South Penn Oil Co.; and, if the jury find that in pursuance of the agreement signed by Alex. McClintock, on the twenty-third day of December, 1889, a legal assignment of the Donaldson option was made by McClintock and wife and placed in the hands of the South Penn Oil Co., or its agent, before any rescission of said contract on its part, then the defendant cannot protect itself under the provisions of the statute of frauds, and the plaintiff would be entitled to recover the contract price for said option.

Answer: That is affirmed.[12]

·The defendant requests the court to charge as follows:

1. The contract, for the alleged breach of which the plaintiff is to recover, if at all in this case, is the agreement claimed to be evidenced by the receipt of December 23, 1889.; and said contract is a contract to create or assign an interest in lands, to wit, an interest in the Donaldson farm, acquired by the plaintiff under her contract with S. B. Donaldson, administrator of Richard Donaldson, deceased, dated December 18, 1889.

Answer: This point, as we understand it, is affirmed; that is, that the contract in controversy is "a contract to create or assign an interest in lands."

2. Under the law of Pennsylvania, a contract for the sale and purchase of an interest in lands cannot be enforced, either by proceedings to compel the purchaser to accept title to the interest sold, or by proceedings to compel the purchaser to pay the purchase money, unless the contract was put in writing,

Charge of Court below.

showing distinctly its terms and its subject matter, and signed by the party selling the interest, or for him by his agent thereto lawfully authorized in writing.

Answer: That is affirmed.

3. Therefore, even if the receipt in evidence, dated December 23, 1889, sufficiently embraced the terms of the alleged contract for the sale by Mrs. McClintock, the plaintiff, to the South Penn Oil Co., the defendant, of her said interest in the Donaldson lands, the said receipt not having been signed by Mrs. McClintock herself, and there being no evidence that Alexander McClintock, who signed her name to it, was thereto lawfully authorized in writing so to sign, it is insufficient to manifest a valid contract for the sale of the interest, enforceable under the law.

Answer: This is affirmed.

4. Therefore, even if the jury should find that an unconditional contract was made by the defendant, for the purchase of the plaintiff's interest in the Donaldson land, such contract, notwithstanding the receipt in evidence dated December 23, 1889, was but a verbal contract, invalid under the law to pass the plaintiff's interest, or to create her a trustee thereof for the defendant; and, though the plaintiff may have an action against the defendant for the breach of the contract, yet she can recover as damages, under the evidence in this case, not the amount agreed to be paid by the defendant, but only what was expended by her on the faith of the contract before the refusal of the defendant to accept.

Answer; This point is affirmed, if the jury find that the contract between the parties *is* evidenced by this receipt dated December 23, 1889, signed by Alex. McClintock, and what transpired between him and the company's agents when it was given, and that Mrs. McClintock's written assignment, duly signed and acknowledged, was never delivered and accepted.[13]

5. That, even if the said receipt, dated December 23, 1889, signed as it is, sufficiently manifests a valid contract in writing, enforceable against the defendant, yet if the jury find that before this suit was brought, to wit, on January 10, 1890, the plaintiff had previously failed to make her payment due January 1, 1890, on her said contract with S. B. Donaldson, administrator, and thereupon forfeited her rights under it, and

said Donaldson, acting upon her forfeiture sold the land to another party, then the plaintiff, when her suit was brought, had no interest in the land which she could hold as trustee for the defendant, to entitle her to recover the purchase money in affirmance of the contract, and her recovery would be limited to her actual loss or expenditures incurred and made on the faith of her alleged contract with defendant.

Answer: This point is answered in this way : If the jury find that the contract was in writing, duly signed and lawfully executed by Mattie M. McClintock, the vendor, and she had done everything that she, under the contract, was required to do to fully consummate it, and that the only thing left undone to fully execute the contract was the payment of the purchase money by the defendant company, the vendee, then Mattie M. McClintock could bring suit in affirmance of her written contract, and the measure of damages would be the amount of the unpaid purchase money ; and in such case she would hold the written assignment of the Donaldson agreement (duly signed and acknowledged), as trustee for the defendant company, and would be bound to deliver it to the company whenever called upon.   After December 26, 1890, if the written assignment of Mrs. McClintock became operative as a contract, she had no interest in the land described in the Donaldson agreement, or in the agreement itself ; and, as between her and the defendant company, the non-payment of one thousand dollars to S. B. Donaldson, administrator, on January 1, 1890, was the default of the defendant company.   But, if the jury find that the written assignment, duly signed and acknowledged by Mrs. McClintock, never was delivered to the company, or to some one authorized to receive it for the company, and never became operative as a written contract, and that the receipt of December 23, 1890, signed by Alex. McClintock, and referred to in the point, is the only written evidence of the contract that is binding on both of the parties, and the only evidence to support this action, then the " plaintiff's recovery would be limited to her actual loss or expenditures incurred and made on the faith of her alleged contract with the defendant."[14]

6. But if, on the other hand, the jury find, as is claimed by the defendant from the evidence, that the contract indicated by the receipt in evidence, by the agreement of the parties

Arguments.

when it was made was not to be binding upon the defendant company until it was approved after consultation with its attorney, and that upon such consultation the defendant was in good faith advised by its attorney, and, acting in good faith upon such advice, refused to accept the assignment, then the contract never became complete and obligatory, and the plaintiff is not entitled to recover.

Answer : That is affirmed.

7. That, under all the evidence in this case, the plaintiff is not entitled to recover.

Answer: This is refused.[15]

Gentlemen, the case is with you.

The jury returned a verdict for the plaintiff for $1,161.96. The defendant having moved for a new trial, upon the ground, inter alia, of errors committed in the charge to the jury, the court, McILVAINE, P. J., on January 5, 1891, filed the following opinion :

We have carefully considered the reasons filed in support of the motion for a new trial in this case, and they have failed to convince us that the case should again be referred to a jury. If error was committed, it was of such a character as should be corrected by the Supreme Court, rather than by a re-submission to a jury. We think that we submitted the case to the jury as fairly, and answered the points presented as accurately, as we could if the case were re-tried.

—Judgment having been entered, the defendant took this appeal, assigning for error :

1. The refusal of defendant's offer.[1]

2, 3. The admission of plaintiff's offers.[2] [3]

4–6. The refusal of defendant's offers.[4 to 6]

8–10. The parts of the charge embraced in [ ] [8 to 10]

11, 12. The answers to plaintiff's points.[11 to 12]

13–15. The answers to defendant's points. [13 to 15]

*Mr. Boyd Crumrine* (with him *Mr. Henry McSweeney, Mr. Charles M. Thorp* and *Mr. E. E. Crumrine*), for the appellant:

1. The contract which the plaintiff alleges she made with the defendant is within the statute of frauds, being an alleged sale of her equitable interest or estate in a tract of land : § 1,

Arguments.

act of March 21, 1772, 1 Sm. L. 389; Murphy v. Hubert, 7 Pa. 423; Kline's App., 39 Pa. 463; Meason v. Kaine, 63 Pa. 339. It was not put in writing and signed in the manner required by the statute. Aside from the question whether the receipt of December 23, 1889, is full enough in its terms, that receipt was not a sufficient compliance with the statute, as it was not signed by the plaintiff, nor by her agent "thereto lawfully authorized by writing." It is admitted that her husband, who signed it for her, had no written authority so to do.

2. An attempt is made to use the assignment or deed, prepared and executed for the purpose of carrying out the previous parol contract, and tendered to and refused by the defendant, as a writing to effect a compliance with the statute. But, where a deed does not evidence the contract further than by conveying the subject-matter thereof, it is not a memorandum under the statute: 1 Reed on Stat. of F., § 338. And a deed executed by the vendor and tendered to the vendee, and refused, will not make a previous invalid parol contract valid and enforceable: Sands v. Arthur, 84 Pa. 479; Sausser v. Steinmetz, 88 Pa. 324. That this deed or assignment was not accepted when tendered, is undisputed, and it was error to submit the question of its acceptance to the jury, as complained of in the assignments of error numbered eight, nine, and eleven to fourteen: Galbraith v. Zimmerman, 100 Pa. 374.

3. An action for purchase money on a contract for the sale of lands, is a substitute for a bill for specific performance, and is governed by the same principles. The sufficiency of the contract under the statute of frauds, and whether the evidence is sufficient to take it out of the operation of the statute, are questions of law for the court: Nicol v. Carr, 35 Pa. 381; Irwin v. Irwin, 34 Pa. 525; Overmeyer v. Koerner, 81* Pa. 522; Hess v. Calender, 120 Pa. 138; Reno v. Moss, 120 Pa. 49. In this case, we have the equivalent of an executory parol contract of sale, made four days before the tender of a deed in pursuance of it. The court should have charged that it was not enforceable, as the statute of frauds, being operative to relieve the plaintiff from performance, was equally operative to relieve the defendant: Meason v. Kaine, 63 Pa. 335; Ellet v. Paxson, 2 W. & S. 418; Irvine v. Bull, 4 W. 287.

4. The damages recoverable for the breach of a parol contract

within the statute of frauds, are, in the absence of fraud, merely nominal, together with such expenses and payments as have been incurred or made to carry out the contract : Hertzog v. Hertzog, 34 Pa. 419 (overruling Jack v. McKee, 9 Pa. 235); Malaun v. Ammon, 1 Gr. 123 ; Tripp v. Bishop, 56 Pa. 426 ; Meason v. Kaine, 67 Pa. 130 ; Sands v. Arthur, 84 Pa. 479 ; Sausser v. Steinmetz, 88 Pa. 324 ; Bitner v. Brough, 11 Pa. 139 ; Harris v. Harris, 70 Pa. 170. The only damages shown by the plaintiff were the expenses of four trips to Pittsburgh, amounting to much less than the fifty dollars paid to her by the defendant, and therefore the defendant's seventh point, " that under all the evidence in this case the plaintiff is not entitled to recover," should have been affirmed.

5. By permitting her contract with Donaldson to become forfeited by the non-payment of one thousand dollars on January 1, 1890, the plaintiff disabled herself from enforcing her alleged contract with the defendant by this action, brought January 10, 1890. She could not recover the price without being in a position to convey: Meason v. Kaine, 63 Pa. 339 ; s. c. 67 Pa. 131 ; Mitchell on Contracts for Sale of Real Estate, 79. The non-payment of the money due Donaldson was not the default of the defendant company, because it had not accepted the assignment from the plaintiff. Finally : Upon the evidence simply that Mr. Thorp, the company's attorney for the examination of the title, on December 26th, wrote the assignment for the plaintiff to execute, the court below in effect permitted the jury to find that he had authority to write it as a proposition of the defendant, so that on its execution it became a binding contract. But there was no evidence that he had such authority, and by the plaintiff's own showing it was not until December 27th that her husband was referred to Mr. Thorp as having authority to act finally.

*Mr. R. W. Irwin* (with him *Mr. John W. Donnan, Mr. A. Donnan* and *Mr. M. C. Acheson*), for the appellee :

1. The receipt indorsed on the option and signed by Alexander McClintock as agent of his wife, may be read with the option to which it refers as " the within contract : " Beckwith v. Talbot, 95 U. S. 289 ; Salmon Falls Mfg. Co. v. Goddard, 14 How. 446 ; Wiley v. Robert, 27 Mo. 388 ; Peck v. Vander-

Arguments.

mark, 99 N. Y. 29 ; Baker's App., 107 Pa. 381 ; Coles v. Tre-
cothick, 9 Ves. 252 ; and reading the two papers together, they
constitute a sufficient memorandum of the agreement to take
the case out of the statute of frauds : Mitchell on Cont. for
Sale of Land, 14, 15 ; Raubitscheck v. Blank, 80 N. Y. 478
Soles v. Hickman, 20 Pa. 180.

2. Although Alexander McClintock, at the time of signing.
the memorandum aforesaid, had no written authority from his
wife, yet the moment she ratified his act by signing and ac-
knowledging the transfer, the contract became binding upon
both parties : Berger's App., 96 Pa. 443 ; Walker v. Coover,
65 Pa. 430 ; Maclean v. Dunn,* 4 Bing. 722 (15 E. C. L. R.
129) ; Story on Agency, § 244 ; Wharton on Agency, § 76 ;
Broom's Leg. Max. 867 ; Wilson v. Tumman, 46 E. C. L. R.

---

* Maclean v. Dunn, 4 Bing. 722 (15 E. C. L. R. 129), was an action against
the purchasers of a quantity of wool, to recover the contract price. The
contract was made by a broker, who delivered bought and sold notes.
The broker had made a memorandum of the contract in his book, and tes-
tified that the purchasers afterward assented to it verbally. It was objected
on the trial, in behalf of the defendants, that there was no valid contract
between the parties, the broker's book not having been signed, and the
bought and sold notes not having been delivered to both parties ; and that
the broker, having no authority at the time of the bargain, was not an
agent authorized within the meaning of the statute of frauds, to wit, the
seventeenth section of the English statute, relating to contracts as to per-
sonalty. Best, C. J., delivering the opinion, said :

" It has been argued, that the subsequent adoption of the contract by
Dunn will not take this case out of the operation of the statute of frauds ;
and it has been insisted, that the agent should have his authority at the
time the contract was entered into. If such had been the intention of the
legislature, it would have been expressed more clearly. But the statute
only requires some note or memorandum in writing to be signed by the
party to be charged, or his agent thereunto lawfully authorized ; leaving·
us to the rules of common law as to the mode in which the agent is to re-
ceive his authority. Now, in all other cases, a subsequent sanction is con-
sidered the same thing in effect as assent at the time. Omnis ratihabitio
retrotrahitur, et mandato æquiparatur. And, in my opinion, the subse-
quent sanction of a contract, signed by an agent, takes it out of the opera-
tion of the statute more satisfactorily than an authority given beforehand.
Where the authority is given beforehand, the party must trust to his agent ;
if it be given subsequently to the contract, the party knows that all has
been done according to his wishes."

For the seventeenth section of the English statute, not in force in this
state, see 3 Reed on Stat. of F., 266.

242; McDowell v. Simpson, 3 W. 129; Dumn v. Rothermel, 112 Pa. 272. The authorities cited by appellant as to the measure of damages are therefore wholly inapplicable. The plaintiff having sold her rights under the option to the defendant, it was the defendant's duty to keep it alive. A payment by her of the one thousand dollars due Donaldson on January 1st, would have been a voluntary payment, which she never could have recovered from the defendant.

OPINION, MR. JUSTICE MITCHELL:

The receipt by plaintiff's husband expressed the fact of a sale, by the acknowledgment of receipt of part of the purchase money, and fixed the time and amount of the remaining payment. All the other terms of the contract, including the identification of the subject matter, were shown by the original agreement of Donaldson, on which the receipt was indorsed. The two papers thus constituted one instrument, which, so far as appears on its face, was a sufficient memorandum in writing to satisfy the statute of frauds. Its defect in that regard was dehors the instrument itself, and lay in the want of written authority in the husband to act as agent for his wife. Had his authority been in writing at that time, even though on a separate paper, no question of the validity and binding force of the contract could have arisen. His action as agent was, however, formally ratified and adopted by the wife, in writing, before any rescission or change of position in any way by the defendant.

The exact question before us, therefore, is whether such ratification by the wife, of its own force, perfected and validated the agent's original contract, or whether it still required acceptance by the grantee.

No case precisely in point has been found, and we are left to determine the question on general principles. It is conceded that a deed tendered by the vendor, but refused by the vendee, will not validate a parol contract, and it is argued that the present case stands upon the same footing. But I apprehend that the rule in question results from the common-law requirement that every writing must be accepted before it becomes a contract. It is sometimes said, however, that the reason a deed tendered is ineffectual under the statute, is that until such

Opinion of the Court.

tender the vendor was not bound; the vendee could not have held him, and, there being therefore, a want of mutuality in the agreement, equity will not specifically enforce it.  Whether the equitable doctrine of mutuality has any proper place in cases arising under the statute of frauds, is a vexed question on which our decisions are not in harmony, and are badly in need of review and authoritative settlement: See Tripp v. Bishop, 56 Pa. 424; Meason v. Kaine, 63 Pa. 335; Sands v. Arthur, 84 Pa. 479, and the comment upon them by Judge Reed in his treatise on the Statute of Frauds, § 367.  But whatever the foundation of the rule, it is doubtful if the case of ratification of an agent's act comes fairly within it.  If the agent had been properly authorized, the contract would have bound both parties in the first instance, and the settled rule is that ratification is equivalent in every way to plenary prior authority.  The objection of want of mutuality is not good in many cases of dealing with an agent, for if he exceeds his authority, actual and apparent, his principal will not be bound, yet may ratify, and then the other party will be bound from the inception of the agreement.  The aggregatio mentium of the parties need not commence simultaneously.  It must co-exist; but there must be a period when the question of contract or no contract rests on the will of one party to accept or reject a proposition made, and this interval may be long or short.  The offer, of course, may be revoked or withdrawn at any time prior to acceptance, but after acceptance it is too late.  The contract is complete.  If, in the present case, the defendants had written a letter to plaintiff, stating that they had made the agreement with her husband as agent, but that, his authority not being in writing, they requested her to send them a written ratification, and thereupon she had written and mailed an acceptance and ratification of her agent's act, there could be no question of the contract: Hamilton v. Insurance Co., 5 Pa. 339, and cases cited in 3 Am. & Eng. Encyc. of Law, 856, tit. Contract; and 13 Am. & Eng. Encyc. of Law, 233, tit. Mail.  And in effect, that is just what the defendant did here.  It made the original agreement with the husband, evidenced by his indorsement on the Donaldson contract, which was delivered into its possession.  On the day that payment was called for by the indorsed agreement, the defendant further indorsed on the contract an assign-

Opinion of the Court.

ment by husband and wife, which would be a written ratification of the most formal kind, of the husband's previous act, and, as the jury have found, delivered it to the husband unconditionally for execution and acknowledgment. The defendant's consent to the contract sued upon was thus manifested; and upon acceptance by plaintiff, the contract became binding as a common-law contract of both parties, and upon her signature it became a contract in writing within all the requirements of the statute. The objects of the act, certainty of subject matter, precision of terms, reliability of evidence, and clearness of intent of the landowner, are all secured, and we see no particular in which either the letter or the policy of the statute has been violated.

The cases cited by appellee, though not decisions on the precise point, tend to sustain the conclusion here reached. Maclean v. Dunn, 4 Bing. 722, was under the English statute, which requires only that the agent should be " lawfully authorized; " but the opinion of Lord Chief Justice BEST illustrates the effectiveness of ratification as equivalent to antecedent authority. In our own case of McDowell v. Simpson, 3 W. 129, the opinion of KENNEDY, J., is clearly expressed that a lease by an agent in excess of any authority, either parol or written, may be ratified, but the ratification to create a valid term for seven years must be in writing. So far as the case goes, it is directly in line with our present conclusion, and it has never been questioned, but on the contrary is cited with approval in Dumn v. Rothermel, 112 Pa. 272.

This disposes of the main question in the case, and with it the exceptions relating to the measure of damages fall. The plaintiff recovered only the contract price to which she was entitled.

The only remaining assignment that need be specially noticed is the fourteenth, which is to the refusal of defendant's point that plaintiff, having allowed her estate or interest in the land to lapse or become forfeited by non-payment to Donaldson, was disabled from suing in affirmance of the contract. If any estate remained in plaintiff, the law would certainly require her to convey it to defendent upon payment of the verdict. But her estate had expired, not through any fault of hers, but by default of payment to Donaldson, which it was not for her, but for defendant, as purchaser and assignee of her option, to make. It was precisely analogous to a purchase by defendant

Statement of Facts.

of a term which had a month to run, and a delay in taking possession until the expiration of the month, when the term was at an end. For such a loss the purchaser, not the seller, is responsible.

Judgment affirmed.