Yocom, Appellant, *v.* Township of Union.

Argued Nóvember 13, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*C. H. Ruhl,* for appellant.

*A. H. Rothermel,* of *Rothermel & Mauger,* for appellee.

Opinion by Gawthrop, J., February 28, 1930:

Plaintiff alleged in his statement of claim, filed August 16, 1927, that "within the past six months, the supervisors of the defendant corporation ...... negligently, wrongfully and wilfully caused a deep ditch or drain to be cut into the side of" a public highway extending north and south through his farm, and thereby diverted into it surface water accumulating on an adjacent road, which naturally flowed in the opposite direction. It is evident that the purpose of the suit was not so much for the amount of damages claimed as to settle a question of right; for plaintiff submitted no testimony to prove special damages. As there was no real dispute as to the facts, the trial judge directed a verdict for plaintiff for nominal damages. Subsequently he sustained defendant's motion for judgment n. o. v. and entered judgment in its favor. Plaintiff appeals.

There is no real dispute as to the material facts which are as follows: Two public highways are involved, one, which we shall call the main road, runs north and south and the other, which we shall call the intersecting road, runs into the main road from the east, but does not cross it. The point of intersection is fifty-five feet north of the high point in the main road. A line passing through this point east and west lies on the watershed dividing the flow of surface water to the north and to the south. According to the testimony of plaintiff's engineer the elevation of the main road at the watershed line is one foot higher than at the intersection of the two roads, that is, there is a drop toward the north of one foot in fifty-five feet. In repairing and improving the intersecting road just east of the main road, the supervisors raised the surface thereof about a foot, which made it about level with the surface of the main road at the watershed. One of the purposes of the improvement was to remedy a muddy condition of that road which was caused by

the drainage of surface water into it from about eight acres of land at the southeast corner of the intersection. It is undisputed that the drainage from these eight acres, if unobstructed, would have flowed northwardly; and that one of the results of the improvement of the road was that the accumulation of surface drainage above mentioned, which formerly flowed into the main road and then northwardly along the gutter thereof, was diverted to the south and flowed along the east gutter of the main road in front of the plaintiff's buildings, which stand some two hundred and sixty feet south of the intersection, where there is a six per cent. grade in the road. Plaintiff's engineer testified that the depth of the ditch on the main road, from the intersection to the plaintiff's barn, was from nine inches to a foot. An engineer called by the defendant testified that when he made measurements on the ground April 5 and April 11, 1928 (when, according to the plaintiff's testimony, the conditions were the same as they were when the measurements were taken by his witness) the main road, at the intersection, was seven inches lower than it was at a point forty-eight feet to the south thereof; and that the ditch on the east side of the main road at the high point thereof was nine inches deep and practically level between those points.

The contention of the appellant is that the case is ruled by certain decisions of the Supreme Court and this court, to the effect that the authority vested in township supervisors to drain surface water from a road upon the land of abutting owners is limited to the drainage of such waters as would have naturally flowed upon them.

In Woolheater v. Mifflin Township, 74 Pa. Superior Ct. 557, the allegation was that the authorities of the township had turned surface water from its natural course and negligently discharged it over his land. His property was on Bowes Avenue, which was intersected

by Hazel Street. Formerly the water coming down Hazel Street was carried over Bowes Avenue. The supervisors, in repairing Bowes Avenue, turned the water which flowed down Hazel Street, into a ditch on Bowes Avenue and down the same so that it reached plaintiff's property. In sustaining a recovery Judge TREXLER, speaking for the court, said: ''The water that naturally reached his property he had to take care of, but the township had no right to divert the water to his land and thus increase the area of the watershed draining over his premises. It has never been held 'that a municipal corporation may throw a body of water upon the property of one of its citizens which would not naturally have flowed there. It may not throw upon the land of A the water which flows upon the land of B': Torrey v. City of Scranton, 133 Pa. 173, . ...... It is true that under the Act of June 13, 1836, P. L. 560, Section 32, supervisors are given large powers in relation to drains and ditches along public roads, but that does not authorize supervisors to close up the natural course which drains certain property and turn it into another course to the detriment of the property holder. The scope of that act was defined in Hall v. Rine, 60 Pa. Superior Ct. 401.'' See also Lorah v. Amity Township, 35 Pa. Superior Ct. 529, and DeNoble v. Wilkins Township, 74 Pa. Superior Ct. 389, in which the right of the plaintiff to recover was denied because the natural drainage of the water was over his land. We held in the recent case of Menichino v. City of Newcastle, 96 Pa. Superior Ct. 405, that a municipal corporation diverting the flow of surface water so that it accumulates and flows upon abutting property where it would not flow naturally is liable to the abutting owner in damages for the resulting injury.

As the water of which the plaintiff complains would never have reached his premises but for the actions of the township authorities and their actions resulted in imposing upon his land a servitude to which it was

not naturally subject, he suffered an invasion of a right which entitled him to nominal damages in the absence of proof of special damages. Strauss v. Allentown, 215 Pa. 96, relied upon by the learned judge of the court below, is clearly distinguishable from the present case on its facts. There the city had not in any degree enlarged the area of the watershed and the increased flow of water into the plaintiff's tailrace resulted merely from changes of the character of the surface of the watershed.

The judgment of the court below is reversed and judgment is now entered for the plaintiff on the verdict.