## Messinger et ux., Appellants, *v.* Washington Township.

Argued October 8, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Alfred M. Nittle,* for appellants.

*J. Lawrence Davis,* Township Solicitor, for appellee.

OPINION BY WOODSIDE, J., January 21, 1958:

The court below dismissed the complaint of Harold J. Messinger and wife and denied them injunctive relief. They had filed the complaint in the Court of Common Pleas of Northampton County to compel the Township of Washington to remove a pipe and drain from their premises, and to restrain the township from

diverting water from its road onto their land. Judge FRACK, sitting as a chancellor, took testimony, but died before making an adjudication. Thereafter, Judge BARTHOLD entered a decree nisi dismissing the complaint. After the plaintiffs filed exceptions to the chancellor's findings, conclusions and decree, the court en banc entered a final decree dismissing the complaint. The plaintiffs appealed to this Court.

The defendant offered no testimony at the hearing. The facts, which are not in dispute, are as follows: J. Arling Weaver was the owner of a 57 acre farm, which he had purchased in 1906. Between 1935 and 1940 the supervisors of Washington Township came to Weaver and asked him for permission to put a pipe across the township road onto his farm. This meant that the surface water from the highway, and particularly that flowing in the gutter on the opposite side of the road, would be discharged on his farm. Weaver gave the supervisors permission to lay the pipe saying, "Go ahead; it will be to my advantage because I get the seepage in the meadow from the street." He testified that he thought this would "benefit" him because it would fertilize his meadow. He testified further that he "asked for no damages," . . . he "was simply interested in the benefit of the township." The permission "was purely by word of mouth," and "nothing was said about how long [he] would allow the drain to remain"—"there was no time limit."

Following this agreement, the supervisors placed a grate along the side of the road opposite the Weaver farm, dug a ditch across the dirt highway and onto Weaver's land, and placed in it an iron pipe about 16 inches in diameter with a terra-cotta extension. The pipe extended 3.4 feet onto Weaver's land. The water from the pipe then flowed into an open ditch 4 feet deep which was dug a few feet further onto his land,

and from there it flowed into Weaver's meadow. Later, the township macadamized the road under which the pipe had been laid. There is nothing in the township records relating to the drain or the entry upon Weaver's land. Before the drain pipe was laid there had been a drain further down the road near the home of two "old ladies" who objected to it, and the drain in question was substituted for the one near the home of the "old ladies."

September 15, 1948, Weaver sold to Lillie A. Fidler two lots from the farm for $250. These lots had a frontage along the road of 81.2 feet, a depth of approximately 148 feet and a rear dimension of 194 feet. The pipe entered one of these lots. On April 3, 1951, Fidler conveyed these lots to the plaintiffs for $650.

The plaintiffs had the lots surveyed, and examined them to determine where to locate a house which they intended to build. They say that they did not see the pipe or the four foot ditch because of grass and elderberry and morning glory stalks, and did not know it was there until after the cellar to their house was dug. Nevertheless, they completed the house. They complain that the water from the pipe floods the rear of their lot, that the ditch is dangerous and damaging to the front of it, and that the drain prevents the use of the side entrance to their home.

The plaintiffs take the position that Weaver gave the township a revocable license to enter upon his farm and discharge water on it and that they, as successors in title, have the right to revoke the license. Proceeding upon this theory, they notified the township of their intent to revoke the township's license to use their land, and thereafter, when the township did not remove the pipe nor permit the plaintiffs to fill in the ditch, they brought this action for injunctive relief.

It is settled that "a municipality, while not liable to a property owner for an increased flow of surface water over his land arising merely from changes in the character of the surface produced by the opening of streets and the building of houses in the ordinary and regular course of the expansion of the city, may not divert the water onto another's land through the medium of artificial channels:" *Rau v. Wilden Acres, Inc.,* 376 Pa. 493, 494, 495, 103 A. 2d 422 (1954); *Morton v. Dormont Borough,* 334 Pa. 283, 5 A. 2d 803 (1939).

Section 1152 of The Second Class Township Law of May 1, 1933, P. L. 103, 165; 53 PS §19093-1152, in effect at the time of the construction of the drainage facility, provided:

"Section 1152. Power to Open Drains and Ditches. —The township supervisors may enter upon any lands or enclosures, and cut, open, maintain, and repair such drains or ditches through the same as, in their judgment, are necessary to carry the water from the roads, streets, lanes or alleys.

"If any person shall stop, fill up, or injure any such drain or ditch, or shall divert or change the course thereof, without the authority of the supervisors, such person shall for every such offense pay a penalty of not more than twenty-five dollars, together with the cost of restoring such drain or ditch, to be recovered in a summary proceeding. The penalty and moneys so recovered shall be paid to the township treasurer."

Substantially the same provision appears in Section 1152 of The Second Class Township Code of July 10, 1947, P. L. 1481, 1571; 53 PS §66152.

The township supervisors acted lawfully and within their statutory authority in constructing the drainage pipe and ditch about which the plaintiffs complain. It is true that the owner could have obtained

compensation for what the township supervisors had done. *Yocom v. Township of Union*, 98 Pa. Superior Ct. 540, 544 (1930). The owner, however, waived his right to be compensated.

We agree with the chancellor, Judge BARTHOLD, that "the testimony establishes conclusively that Weaver, the owner of the land when the entry and the injury took place, waived all rights to damages. In essence he agreed with the township supervisors that a portion of the drainage facility be placed upon his land for an unlimited time without compensation for damages. Weaver was called on the plaintiffs' side of the case. Without contradiction he testified that he permitted the township supervisors to place the drain upon his land for an unlimited time and asked for no damages."

The entry upon Weaver's land by the township was not adverse but by agreement. It is, therefore, not necessary for us to consider the various contentions nor to examine the numerous legal principles concerning eminent domain to which our attention was called in the briefs of both counsel. It is not necessary for us to determine whether the township could obtain title through eminent domain to the land which it occupies without having complied with Article X of The Second Class Township Law and the amending Code of 1947 (53 PS §66001 et seq.) or whether the right to bring any action concerning this matter is exclusively in Weaver. See *Hughes v. Elizabeth Borough*, 343 Pa. 175, 22 A. 2d 726 (1941); *Carlisle Borough v. Fladger*, 157 Pa. Superior Ct. 206, 42 A. 2d 187 (1945).

Although we appreciate the thoroughness with which counsel for both parties have presented to us all the legal principles that might possibly have a bearing upon this matter, and although we have carefully examined and considered all of them including

those to which we make no reference in this opinion we, nevertheless, believe that the principles governing this case have been long and conclusively established in this Commonwealth.

When the township entered into the parol agreement with Weaver, it obtained a license to use his land for the pipe and the ditch and to discharge water upon his land. It has long been settled in this Commonwealth that such an agreement need not be in writing but may be proved by parol. *LeFevre v. LeFevre,* 4 S. & R. 241 (1818) ; *Meigs's Appeal,* 62 Pa. 28, 34, 35 (1869) ; *Reagan v. Curran,* 226 Pa. 265, 269, 75 A. 362 (1910).

The appellants recognize that the township had a license for the use which it was making of the land in question, but they contend that it was revocable and that they exercised their right to revoke it.

In Pennsylvania the courts have held many times that a license to do something on the licensor's land, when followed by the expenditure of money or labor on the faith of it, is irrevocable, and is to be treated as a binding contract. *LeFevre v. LeFevre,* supra; *Rerick v. Kern,* 14 S. & R. 267 (1826) ; *Thompson v. McElarney,* 82 Pa. 174, 177 (1876) ; *Cole v. Ellwood Power Company,* 216 Pa. 283, 289, 65 A. 678 (1907). The courts of Pennsylvania go beyond the common law and beyond the rulings of the courts of equity in most other states in holding this. *Huff v. McCauley,* 53 Pa. 206, 209 (1866) ; *Leininger v. Goodman,* 277 Pa. 75, 78, 120 A. 772 (1923).

Here the township acting upon the oral agreement with Weaver, placed a grate in the gutter, dug a ditch, and laid a pipe across the road. This constitutes an expenditure of a substantial sum. Furthermore, the township subsequently built a macadam road over the pipe. The construction of a hard surface road re-

quires consideration of drainage problems. The grate and pipe must have entered into the township's construction problem when macadamizing the highway. It is suggested that the original cost of laying the pipe did not exceed $100. Even this is a substantial sum in the light of the value of the land onto which it was built.

We need not consider whether the "benefit" which Weaver expected from the water constituted consideration for the agreement. Clearly, the expenditure of the township made unnecessary any consideration at the time the agreement was made.

Justice GIBSON said in *Rerick v. Kern,* supra, 14 S. & R. 267, 272 (1826) "A right under a license, when not specially restricted, is commensurate with the thing of which the license is an accessory." See also *Campbell v. McCoy,* 31 Pa. 263, 264 (1858). The "thing of which the license is an accessory" here is the drainage of the road, not, as the appellants argue, the fertilizing of the meadow.

Appellants contend that it should be inferred from the agreement that the license of the township was limited to the time when the land was used as a meadow, and that when Weaver sold it for building lots the license was revoked or, at least, became revokable. Their own evidence establishes conclusively, by the testimony of Weaver himself, that "there was no limit" to the license. The appellants' suit is based upon the fact that the pipe is discharging water from the road onto their land. This being the very purpose for which the license was sought by the township supervisors and granted by Weaver, it is clear that the purpose for the license still exists.

There can be no doubt that the appellants took title to their land subject to the right of the township. *Tide Water Pipe Co. v. Bell,* 280 Pa. 104, 113, 114, 124 A.

351 (1924); *Leininger v. Goodman,* supra, 277 Pa. 75, 78, 120 A. 772 (1923); *Sturgeon v. Borough of Oakdale,* 77 Pa. Superior Ct. 448 (1921).

The appellants contend that they had no knowledge of the drain until after they had dug the cellar to their house, but they had constructive knowledge of anything so obvious as the pipe and ditch on the lots which they purchased and examined for the purpose of building their home on it.

The appellants point out that the decisions supporting an irrevocable license rest upon the principle of equitable estoppel (See *Reagan v. Curran,* supra, 226 Pa. 265, 269, 75 A. 362) and that the equities in this case favor them. As we view it the equities do not favor them. They took title to the lots with constructive notice of the drain. They built their house on the lots with actual knowledge of the drain. The township must discharge the water from the highway at some place. If the appellants were to succeed in this action, the township would be required (1) to purchase or condemn the land on which the drain is now located, or (2) to build a drain at some other place. The appellants offered evidence in this case (although they later dropped the claim), that the fair market value of their property without the drain was $1750 more than it was with the drain. This is some indication of what the appellants would consider as the fair value of the land now being used and the right to discharge the water there. If the township were to place the drain at some other place it would be required to place it under a hard surface road at considerable expense.

Considering the number of second class townships, the very small budgets many of them have had over the years, and the manner in which it was practical for them to do business, we can safely assume that

there were hundreds, and possibly thousands of drains constructed without the formality of written agreements with the owners of the land upon which the water was discharged. Laying the pipes upon the oral permission of the owners has been recognized by the law as acceptable procedure. The law is clear that the townships thereby obtained an enforceable license which under the circumstances of this case cannot be revoked.

Decree affirmed, at the cost of appellants.