## Hennebont Company v. Kroger Company, Appellant.

66

[redacted]

Argued November 11, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Blair S. McMillin,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Patrick M. O'Donnell,* for appellee.

OPINION BY MONTGOMERY, J., March 24, 1972:

This appeal is from a judgment entered in favor of Hennebont Company (Hennebont), plaintiff-appellee, in ejectment, for exclusive possession of a tract of land in Ross Township, Allegheny County, Pennsylvania. Hennebont and The Kroger Company (Kroger), defendant-appellant, each moved for summary judgment

on the pleadings, etc. Kroger's motion was refused and Hennebont's was granted.

Hennebont claims exclusive possession of the land as the holder of the proprietory interest therein under a deed from the executor and heirs of the estate of Jacob F. Fry, deceased, dated August 11, 1969. Kroger claims the right of occupancy and use of part of the property under two recorded leases dated August 5, 1966, and August 9, 1966, from Bally Castle Corporation (Bally), owner of the adjoining property. Said leases demised unto Kroger certain land adjoining the subject property on the north and a storeroom 103 feet by 145 feet in a shopping center known as Northland Center which had been or was being constructed thereon. In the "lease agreement" for the storeroom, which was made part of the lease, there was granted to Kroger ". . . the rights of ingress, egress and customer parking in that area outlined in green on the plot plan marked Exhibit 'A' ", which is the property that is the subject of this appeal. These leases were for ten and fifteen-year terms, with provision for renewal; and they commenced September 1, 1966, and October 1, 1966, respectively.

There is no dispute as to the easement for ingress and egress which had been established in the deed to Bally from Elizabeth C. Fry and Joseph F. Fry, her husband, dated December 20, 1960. Hennebont recognizes that Kroger has this right. The present dispute centers around the provision for customer parking on the "A" tract. This right had been granted to Bally in a separate agreement between it and the Frys which bore the same date as the aforesaid deed to it, dated December 20, 1960. This written sealed agreement gave to Bally an option to buy the subject property now owned by Hennebont after the death of the surviving Fry but only if exercised within six months of that

death. Mrs. Fry died February 26, 1964; and Mr. Fry on January 10, 1969. Thus, the termination date of the option was July 10, 1969; and the date when it might first be exercised, January 10, 1969.

The same agreement also gave to Bally "a license" to occupy the level part of the property covered by the option which was "just south of the property conveyed to Bally Castle." The license ran concurrently with the option and was to cease and terminate when said option expired.

Apparently the parties interpreted the agreement to mean that Bally had the right to park on the remaining Fry property from the date of the agreement and not only during the six-month period when the option to buy it might be exercised. Kroger enjoyed that privilege without objection during the entire period, commencing at the beginning of the term of its lease, October 1, 1966, to the time Hennebont acquired the property, which was on August 11, 1969; and thereafter until notified to cease and desist from doing so by Hennebont on August 31, 1970.

The option to buy was not exercised by Bally; but by a separate paper, dated July 3, 1969, it assigned to Hennebont all its right, title, and interest ". . . in that option agreement dated December 20, 1960, . . . including but not limited to, its right and option to purchase a certain tract of land in Ross Township. . . ." Thus, Hennebont acquired the option and the right of parking. Hennebont, thereafter, exercised the option and purchased the property as previously stated.

We accept the lower court's finding, as stated in the opinion of the court en banc, that, "At the time of the assignment of the option to the plaintiff, its exercise thereof and the taking of title, the plaintiff was aware of the lease and lease agreement of the defend-

ant, the license and the use by the defendant of that portion of 'Parcel B'[1] for customer parking."

At the time that Bally gave the long-term leases to Kroger, it had the option to buy during the designated period, and also the privilege of parking automobiles on the premises covered by the option. Its option rights gave it an uncertain though substantial interest in the land covered by the option. *Fiegelman v. Parmoff Corporation,* 435 Pa. 461, 257 A. 2d 575 (1969); *Synes Appeal,* 401 Pa. 387, 164 A. 2d 221 (1960); *Powell Appeal,* 385 Pa. 467, 123 A. 2d 650 (1956). In this connection, we quote with approval Hon. William H. NELLY, speaking for the Common Pleas Court of Dauphin County in the case of *Mumma v. Hinkle,* 71 Dauph. 241, 244, 20 Pa. D. & C. 2d 621, 625 (1958), "While the option to purchase real estate is not a sale, the optionee nevertheless does acquire the right to call for a conveyance of the land, and it has been held that this right to purchase constitutes a substantial interest in the land."

Its license, the name given to the parking privilege in the Fry Option Agreement, is ordinarily considered to be a mere personal or revocable privilege to perform an act or series of acts on the land of another. *Semiramis D. Baldwin v. B. Franklin Taylor and Joseph Bonsall,* 166 Pa. 507, 31 A. 250 (1895); *Shipley's Estate,* 45 Pa. Superior Ct. 570 (1911). Although a license is usually created orally, *Semiramis D. Baldwin v. B. Franklin Taylor and Joseph Bonsall,* supra, it may be created by a written instrument. *Lehigh & New England Railroad Company v. Bangor & Portland Railway Company,* 228 Pa. 350, 77 A. 552 (1910).

However, in the present case the privilege was not so simple as the ordinary definition of a license might

---

[1] Parcel "B" is the same as tract "A" previously mentioned and the subject property of this dispute.

indicate. It was in writing, not revocable during the time it was to run, was not merely for the benefit of Bally but inured also to the benefit of its business and social invitees to park automobiles, delivery vehicles and the like on the grantors' property. Also, it provided for the improvement of the grantors' land by the licensee by proper grading, surfacing and marking to make it suitable for parking purposes. Furthermore, it was given for a consideration and made specific reference to the sale to Bally of the adjoining tract on the same day. For these reasons we conclude that the aforesaid agreement conveyed to Bally not merely a license but a right of easement[2] appurtenant to the property it had just purchased from the grantors for an indefinite period, i.e., until the expiration of six months following the death of the survivor of the grantors, the time Bally was allowed to exercise its option rights. Thus, at the time of the leases to Kroger, Bally had an interest in the subject land and an easement in it. In this situation Bally undertook to give long-term leases to Kroger, with no limitation on the duration of the easement specified therein, which leases it had the power to carry out fully by an exer-

---

[2] In its lease to Kroger, Bally referred to this privilege as an easement: "144. Area outlined in green is covered by an easement agreement between Elizabeth C. Fry, formerly Elizabeth C. Greiner, and Joseph Fry, her husband, and the Bally Castle Corporation and recorded in the Recorder's Office of Allegheny Co., Pennsylvania, Deed Book Vol. 3384, Page 638."

However, whether it was a license, a license coupled with an interest, thus constituting a right, or an easement expressed or by equitable estoppel, it was never revoked by the Frys whether they were licensors or grantors. See *Rerick v. Kern*, 14 S. & R. 267, 16 Am. Dec. 497 (1826) ; *Horatio S. Pierce v. John Cleland*, 133 Pa. 189, 19 A. 352 (1890) ; *Messinger v. Washington Township*, 185 Pa. Superior Ct. 554, 137 A. 2d 890 (1958) ; 25 Am. Jur. Easements & Licenses, Sec. 123 et seq., as to variations in licenses and easements.

cise of its option. However, instead of doing so, it assigned its rights to Hennebont, which had full knowledge of the situation.

The crucial issue in this case is whether Bally could terminate or nullify the parking easement provision in its lease to Kroger by failing to exercise its option to purchase the property and instead assigning that right to a third party, Hennebont, which had full knowledge of the facts, i.e., that Kroger had made the improvements aforementioned and would be deprived of an important adjunct to its grocery business, the denial of parking facilities to its customers. The lower court concluded that this could be done and granted judgment to Hennebont. We disagree.

At the outset of our discussion we arrive at the conclusion that the rights of Hennebont rise no higher than those held by Bally. As assignee of the option agreement, with full knowledge of the leases to Kroger, Hennebont stands in the shoes of Bally, whether the option agreement is considered a chose in action or an interest in land. *Farmers Dep. N. Bank v. Penn Bank,* 123 Pa. 283, 16 A. 761 (1889) ; *Robert Howarth's Sons, Inc. v. Boortsales,* 134 Pa. Superior Ct. 320, 3 A. 2d 992 (1939). Although we have not been referred to a case exactly in point relating to an assignment of an interest in real property or an option to purchase same, it may be inferred from *M. M. McClintock v. South Penn Oil Co.,* 146 Pa. 144, 23 A. 211 (1892), that an assignee of an option to buy real estate takes it with the burdens and obligations of the assignor attached thereto. Hennebont, as assignee, made the payment of the consideration for the property established nine years previously, and it is our opinion that it would be compelled to assume any additional burdens placed on the option by Bally. This would include the burden of the leases to Kroger if, in fact, the right given

to Kroger to park on the option property constituted such a burden. See also *M'Williams v. Nisly,* 2 Sergeant & Rawle 507 (1816) ; *Minick v. Marshall,* 48 Pa. Superior Ct. 43 (1911). As recently as December 20, 1971, the rule was stated by Justice Henry X. O'BRIEN, in the case of *William I. Mirkil Co. v. Gaylon,* 446 Pa. 111, 285 A. 2d 181 (1971), "There is no problem about the unwitting assumption of obligations without concomitant benefits. Instead, the law has always been, as we said in Albert J. Grosser Co. v. Rosen, 436 Pa. 311, 317, 259 A. 2d 679, 681 (1969) : 'By taking the benefits of the lease and collecting the rents, Rosen [the mortgagee in possession] has adopted the lease and must likewise take its burdens.' "

Had Bally exercised its right to purchase the property, no question would have arisen as to Roger's right to enjoy the parking privilege of its leases. Bally could not have repudiated the parking provision of the lease, under the doctrine of estoppel by deed, which has been applied in Pennsylvania to leases, i.e., where one leases property which he at such time does not own and afterwards acquires ownership of such property and then attempts to repudiate the lease, he is estopped from denying the lease on the grounds that he did not have the power to lease the property at the time of the lease. *Phillips v. Tetzner,* 357 Pa. 43, 53 A. 2d 129 (1947) ; *Mott v. Kaldes,* 288 Pa. 264, 135 A. 764 (1927).

Furthermore, if Bally had exercised the option, it could not have repudiated the parking provisions of its lease to Kroger for the further reason that it made the leases as equitable owner of the property although it had not at that time acquired the legal title. The courts of this Commonwealth recognize the concept that when an option to purchase real estate is exercised, the optionee is considered as having had the equitable title to the property from the date of the option and not

from the date it is exercised. *Powell Appeal*, supra; *Peoples Street Ry. Co. v. Spencer*, 156 Pa. 85, 27 A. 113 (1893) ; 55 Am. Jur., Vendor and Purchaser, §43. This adds a stronger reason for applying the doctrine set forth in *Phillips v. Tetzner*, supra, and *Mott v. Kaldes*, supra.

Therefore, Bally established this additional burden on its option by giving this right to Kroger without restriction or limitation during the term of the leases and renewal thereof, which we hold must be assumed by Hennebont as assignee.

Although the lower court gave this obtuse problem mature and careful deliberation, we must conclude that it improperly based its final judgment for Hennebont on the theory that Bally did not have a sufficient interest in the property to create an encumbrance therein by its lease to Kroger that would prevail against the proprietory interest Hennebont acquired from the Fry estate as assignee of Bally. On the contrary, as previously stated, Hennebont assumed the burden of the lease when it accepted the option since it is agreed that Hennebont knew the lease to have been in existence and that improvements had been made pursuant to it.

Judgment reversed and hereby entered in favor of the defendant-appellant, The Kroger Company.