whether the prosecutor thought it a joke or not." It is very true that a highway robbery cannot be turned into a joke. It is equally true that a mere joke cannot be turned into a highway robbery, and any evidence upon this point should have been submitted to the jury. The defendant was charged with a grave offence; one of the high grade of felonies, triable exclusively in the oyer and terminer, and which at one time was punished with death. The defendant committed a rude and improper act, one that might fairly have subjected him to a prosecution for assault and battery; but the case lacks every element of a felonious intent. Speaking for myself, I would not, as a trial judge, sustain a conviction of robbery upon such flimsy evidence as was developed in this case; and I cannot but think that, had the jury been adequately instructed upon the law, they would have reached a different conclusion.

The judgment is reversed, and a venire facias de novo awarded.

# HORATIO S. PIERCE v. JOHN CLELAND ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 26, 1890—Decided March 10, 1890.

(a) Upon two lots of ground, in the joint ownership of three persons, the owners agreed to erect a business building upon a common plan and as a single structure, each owner contributing to the cost of the whole according to the extent of his ownership in the lots.

(b) By the common design of the building, the only access for the second and third stories of the portion of it upon one lot was by means of a stairway entrance upon the other lot and through common corridors upon the upper floors. Subsequently, the owners partitioned the property between them:

1. The building having been so erected, an irrevocable license in the nature of an easement was created; and the owner of one purpart after division, or his grantee, could not interfere with the free and common use, by the owners and tenants of the other part, of the corridors and stairway which were upon their side of the property.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MC-COLLUM, JJ.

No. 157 January Term 1890, Sup. Ct.; court below, No. 4 June Term 1886, C. P. in Equity.

On May 5, 1886, Horatio S. Pierce filed a bill in equity against John Cleland and John Simpson, praying upon the facts therein averred for an injunction restraining the defendants, their employees and workmen, from erecting a "fence" or partition, or in any way interfering with the plaintiff's use of the entrance, corridors, or stairs of a certain building described in the bill. An answer having been filed by the defendants, and issue joined, the cause was referred to *Mr. J. Alton Davis,* as examiner and master.

On March 21, 1889, the master filed a report, by which the material facts in controversy were found to be as follows:

In 1870, Joseph H. Scranton, Horace B. Phelps, H. S. Pierce and Thomas Dickson, owned in common lots 17 and 18, in block 30, situate on Wyoming avenue in the city of Scranton. These lots had together a frontage on Wyoming avenue of 100 feet, and extended in depth 167 feet to an alley in the rear.

In 1876, H. B. Phelps purchased from the executors of Joseph H. Scranton, the latter's interest in the land. The title to the same became vested in Mr. Phelps by deed which was duly recorded.

In 1877–78, Messrs. Phelps, Pierce and Dickson began considering the advisability of improving the land by the removal of the buildings then standing, and the erection of a building which should cover the entire frontage. The idea seems to have originated with Mr. Phelps. An architect was consulted, who prepared several sketches, and submitted them to Messrs. Phelps and Pierce. Mr. Dickson took no part in selecting the plans, but left this matter wholly to the other owners of the property. Various sketches were prepared, submitted and rejected. Finally a sketch was prepared, which in the main, was acceptable, and after changes were made, that were suggested by Messrs. Phelps and Pierce, a formal plan was drawn, specifications prepared, and a contract made with a builder for the erection of the building.

Master's Report.

On December 7, 1878, the contract for the erection of the building was executed by the three parties, and Mr. H. B. Rockwell, the builder. The building was built in substantial conformity with the plans and specifications referred to.

On December 24, 1878, Messrs. Phelps, Pierce and Dickson, by a tripartite deed made partition of the land, Mr. Phelps taking the southerly 50 feet, Mr. Pierce the adjoining 25 feet, and Mr. Dickson the northerly 25 feet. In this conveyance, the grant to each party is absolute. No reservation of a right of way or of passage is made, nor is there any grant of the same to any of the parties.

At the time of the partition, nothing had been done toward the erection of the building, except the adoption of the plans, the letting of the contract, and, possibly some slight excavation for the foundation. A portion of the surface was improved

Master's Report.

with a frame building occupied by a tenant, and some difficulty was experienced in ousting him. This was not accomplished until January 13, 1879, after which work was begun in earnest and prosecuted until the completion of the building in the fall of that year. . . . .

The building was built in substantial conformity to the plans prepared. It is a substantial, three-story brick and stone building, covering the entire frontage of the lots. The first floor is divided into four stores, the southerly one being of double the size of each of the others, having a frontage of about 50 feet. The double store stands on the land allotted to or taken by Mr. Phelps by the partition. . . . .

The second and third floors are divided into rooms suitable for offices, together with the necessary closets. The offices are situate at the front and rear of the building. Through the centre of the building, on the second and third floors, running from the north wall of the Dickson building, through the Pierce building to nearly the south wall of the Phelps building, is a broad corridor. This corridor is used as a passage way between the front and rear offices of each building, as well as for passage between the offices in the different buildings. Well-holes for light and air are constructed in the corridor through the third floor, and by the use of sky-lights in the roof, the building is supplied with light and air. The well-holes and sky-lights are three in number, one in each building, that in the Phelps building being proportionately larger than those in the other buildings.

There are party walls of brick between the Phelps and Pierce buildings, and also between the Pierce and Dickson buildings. On the second and third floors these walls are arched to allow for the corridors.

The entrances from the street to the second story are two in number, and are located wholly in the Phelps and Dickson buildings. The main entrance is located nearly in the centre of the block, at the north line of the Phelps lot; the other stairway is located at the north line of the Dickson building.

The stairways leading from the second to the third floors are likewise wholly within the Phelps and Dickson buildings; that in the Phelps building being at the rear of the corridor, and using a portion of the room that could otherwise be used for

offices.   As placed, the stairway considerably shortens one of
the rear rooms on the second floor, as well as one on the third
floor.   In the Dickson building the stairway from the second to
the third floor is located in the corridor and reaches the third
floor through the well-hole.   The plans, as adopted, provided
for but a single stairway from the second to the third floors.
The Dickson stairway was added at the suggestion of the
builder.   The space in the Pierce building that in the other
buildings is used for stairway, is used for offices.   This in-
creases the rental value of the Pierce building at least two hun-
dred dollars per year.

This structure of the building gives no access to the second
or third floors of the Pierce portion, except by use of the corri-
dor, in connection with the Phelps or Dickson stairways.

After the death of Mr. Phelps, his executors conveyed his
portion of the land, being lot 17, to Elias Morris, who subse-
quently and before the inception of this suit conveyed the
same to the present defendants.   There is no reservation of
any right of way, or any mention of any encumbrance in either
of these deeds.

On May 11, 1886, the defendants, John Cleland and John
Simpson, began to construct a fence or partition across the
corridor in the second story of the building, on the division
line between lots 17 and 18, and thereupon plaintiff filed this
bill. . . . . . If this fence had been completed, plaintiff and
his tenants would have had no access to the main stairway.
Nor would he have had any entrance to the second or third
floors of his building as constructed, except by the use of the
Dickson stairway. . . . .

The location of the main stairway, the one in dispute, wholly
on lot 17, was not the result of an accident, nor did it come
from any mistake of lines; it was done designedly. . . . . It is
found as a fact that there was an agreement made between
Messrs. Pierce and Phelps, at the time the plans were drawn,
by which Mr. Pierce was to use the stairway in the Phelps
portion of the completed building. . . . .

The contract of December 7, 1878, for the erection of the
building is in writing, signed by all the parties and the builder.
It was prepared by using a printed blank, and the written
portions, except the signatures, are in the handwriting of H.
B. Phelps.

Master's Report.

Master's Report.

By the terms of the contract the builder agreed to well and sufficiently erect and finish a three-story stone and brick building on Wyoming avenue, agreeably to the drawings and specifications made by Isaac G. Perry, architect. The first parties covenant to pay the builder for said building the sum of $20,000 " upon monthly estimates to be made by I. G. Perry, architect, or by one or more of the owners as to amount of work done, less ten per cent; provided that in each of such cases a certificate be obtained from the architect or H. B. Phelps that the payment is due;" and again, "11, It is expressly understood and agreed that H. S. Pierce and Thomas Dickson are to be held liable to said Rockwell (the builder), only for one-quarter each of $20,000, the balance, $10,000, to be paid by H. B. Phelps." It is thus apparent that each owner did not pay for one completed building, but each paid his proportion of the cost of the whole building.

The defendants are not purchasers for value, without notice of the right here claimed. They have been the occupiers of the stores in the Phelps building since its completion. They saw, or could have seen, the use of the stairways; they knew the structure of the building. Besides all this they had actual notice of this claim. . . . .

It is also apparent from the testimony that it was contemplated by the owners to make partition of the land, while they were considering the project of building. The architect knew while he was preparing the plans, which was without question before the tripartite deed, that Mr. Phelps was to have the southerly fifty feet, Mr. Pierce the piece adjoining, and Mr. Dickson the northerly quarter. . . . .

——Upon the foregoing facts, the master, citing and discussing Pomeroy's Eq. J., § 611; Memmert v. McKeen, 112 Pa. 315; Thompson v. Miner, 30 Ia. 386; Le Fevre v. Le Fevre, 4 S. & R. 241; Swartz v. Swartz, 4 Pa. 353, concluded his report as follows:

Your master therefore finds that by the contract for the erection of the building, a license was granted by H. B. Phelps to H. S. Pierce to use so much of the common property as was necessary for him to enjoy his interest in the same; that by the erection of the building after partition, in accordance with this contract, this license was to use so much of the several

Opinion of Court below.

property of H. B. Phelps as by the plans and contract for the erection of the building it became necessary to use. By the completion of the building, this license became irrevocable.

Your master also finds that the use of the stairway and corridors, as claimed in complainant's bill, are necessary for plaintiff to reasonably enjoy his property. The acts of defendant in obstructing the corridor and thereby attempting to prevent plaintiff from the use of the stairway were unlawful. The injunction heretofore granted should be made perpetual.

Exceptions to the master's report were filed by both the plaintiff and defendants. These exceptions having been over-ruled by the master, were renewed upon the filing of his report. After argument thereof, the court, ARCHBALD, P. J., on August 19, 1889, filed the following opinion:

To the judges who heard this case it seems to be a very plain one. The clear and undisputed evidence is that the building in question, covering the two lots of land originally in the joint ownership of Mr. Phelps, Mr. Pierce, and Mr. Dickson, was built by these three gentlemen upon a common and single plan, and as a single structure. It matters not, so far as we view the case, whether this plan was adopted before or after the deed of partition, or whether or not there was any express agreement with regard to the common use of the stairways. The building was erected by the owners of the land as a whole, each being liable for a proportionate part according to the extent of his ownership. There was but one plan, one set of specifications, one builder and one contract to build; and these were all treated as concerning one single structure, considered for the time being as a whole. By the common design of this building, the only access provided for the second and third stories of the Pierce part was by means of the stairways upon the Phelps and Dickson parts, and through the common corridors upon the upper floors. Originally one of these stairways was to have been half upon the Phelps and half upon the Pierce part, but this was changed at the instance of Mr. Phelps, for the purpose of saving some of the common expense of building, and was concurred in by the others. Mr. Pierce joined in the execution of this common plan, and bore his share of the expense of constructing the building in this way upon the faith of it.

After this the owners of the adjoining parts of the building could not cut off the access provided by the stairways to his part of the building.

The master has found that there was an express agreement between Mr. Phelps and Mr. Pierce with regard to the use of the stairways now in question. There is sufficient evidence to sustain this in the testimony of the architect, Mr. Perry. If this be so, Mr. Phelps could not subsequently repudiate or revoke it, after Mr. Pierce, in reliance upon it, had consented to the erection of the building in its present form. So far as it is necessary to the plaintiff's case, we affirm this finding of the master. But, as said at the outstart, we do not consider the existence of an express contract essential. The circumstances to which we have referred, of themselves clearly raise an equitable estoppel in favor of the one party and against the other. There is no doubt but that the present arrangement of the building was recognized at the time to be for the mutual advantage of all parties concerned, and so far as it is of such mutual advantage, this advantage cannot be denied by either party to the other. Mr. Pierce, for instance, could not cut off access, through the corridors on the second and third floors, from the Phelps to the Dickson part, nor vice versa. For the same reason, the owners of the Phelps part cannot interfere with the free and common use by the owners and tenants of the Pierce part, of the corridors and stairways which happen to be upon their side of the property. The building being cast by common consent in its present permanent form, neither party can revoke the arrangement upon the faith of which the money of the other has been expended. Each and every part is affected with what, in its nature, is a permanent servitude so long as the building itself stands. It cannot be changed from its present form, nor the right of common access now provided for be interfered with at the will of either party, but only by the common consent of all.

A right of this character, while not strictly an easement, is in the nature of one. It is really a permission or license, express or implied, to use the property of another in a particular manner, or for a particular purpose. Where this permission has led the party to whom it has been given, to treat his own property in a way in which he would not otherwise have treat-

Opinion of Court below.

ed it, as by the erection or construction of permanent improvements thereon, it cannot be recalled to his detriment. Having expended his money upon the faith of it, and not being able to be restored to his original position, equity will not allow the permission to be revoked in breach of such faith. This has given rise to the doctrine of executed or irrevocable licenses.

This doctrine obtained an early foothold in Pennsylvania, and has been consistently adhered to ever since. It first appears in Le Fevre v. Le Fevre, 4 S. & R. 241, and was followed in Rerick v. Kern, 14 S. & R. 267 ; McKellip v. McIlhenny, 4 W. 317, and Swartz v. Swartz, 4 Pa. 353, being possibly carried to its extreme in the latter case. The force of these decisions and their effect upon the present case have not been met by the learned counsel for the defendants. It may, indeed, be, as he suggests, that the doctrine of irrevocable license is principally illustrated in this state by cases which concern water rights, yet it by no means follows that it is limited to these, or that there can be no case of irrevocable license except where it concerns such a right. There is nothing peculiar to water rights which confines the doctrine to them. If it were necessary to prove this, an examination of two or three of the later cases would conclusively establish it.

Thus in Ebner v. Stichter, 19 Pa. 19, a right of way over an alley was sustained as an irrevocable license, where one party had made alterations and improvements on his adjoining property upon the faith of a mutual understanding as to the use of such alley with the adjoining owner. In Cumberland V. R. Co. v. McLanahan, 59 Pa. 23, part of a warehouse had been built by the railroad company upon a corner of land which subsequently vested in the plaintiff. In consideration of this circumstance, the company had conceded a right of way over their own land to the owner of the property. The deed which conveyed to the plaintiff the land in dispute, upon which the corner of the warehouse stood, recited the grant of this right of way as the consideration for having built over upon the adjoining land. The plaintiff, after the conveyance to him, made use of this right of way. It was said with respect to this, by SHARSWOOD, J.: " If the plaintiff below with full knowledge of such grant having been made, whether by George Chambers alone or in conjunction with the executors

of McCulloh, availed himself of and enjoyed the right of way which was the consideration of the grant, it was evidence which ought to have been submitted to the jury of a ratification by him of the license on the faith of which valuable improvements had been made by the grantees, and therefore not within the statute of frauds, and irrevocable, and subsequent ratification by parol must be held to be equivalent to a precedent authority." In Thompson v. McElarney, 82 Pa. 174, the license claimed was the right to cast sawdust into a stream upon which the plaintiff was a lower riparian owner. It was shown that the defendant, Thompson, had been induced to put his mill where it was, and in a different place from what he had intended, at the suggestion of one Beckwith, under whom plaintiff claimed, upon the express agreement that he was to have the privilege of casting his sawdust into the stream. There were other considerations which entered into the agreement which had been fully complied with on the part of the defendant. In discussing the application of the doctrine of irrevocable license to the case in hand, it is said by WOODWARD, J.: " The ground was taken by the plaintiff's counsel, at the argument, that nothing was done by the defendant on the faith of the agreement, and that the rule of the cases quoted could therefore have no application. It was said that, ' Thompson proposed to build the mill at all events, and did build on his own land. The mill could be enjoyed as well and be of as much use to him at one place as at the other.' That is hardly so, for the change caused the very embarrassment in disposing of the mill-waste against which it was the object of the agreement to provide. Suppose a man, having selected a site for a building, changes it and builds his house adjoining that of a neighbor, at the latter's invitation. In doing this he closes up the windows on one side of the neighbor's house. Is it possible that at the neighbor's death his heirs or alienee may enforce the destruction of the builder's house, by setting up the doctrine of ancient lights ? Or, suppose the offered use of a right of way were the motive of the change. Could the neighbor's heirs or alienee oust the builder from the enjoyment of the right because he possessed, by the agreement only, an easement resting in parol grant ? "

We have here a supposititious case, assumed by the court as

clearly illustrating the doctrine of irrevocable license, which is on all fours with the case now in hand; a right of way granted by parol over one man's land to an adjoining owner, who builds on his own land in a different way, that is to say, in a different place from what he would have built except for the promise relied upon. The unquestionable right of the latter to the enjoyment of the privilege so acquired is thus advanced to sustain the claim of the defendant to an irrevocable license in that case. The positions are here exactly reversed from that suggested by defendant's counsel. Instead of the doctrine of irrevocable license not being extended to other than cases of water rights, we have it illustrated by the supposed case of a right of way, and from that carried over and applied to a privilege concerning water. These three cases, therefore, which I have discussed confirm to its full extent the principle upon which the present case must be decided. There is no way of escaping their effect, or of denying their applicability. They entirely sustain the conclusions of the master, and rule the case in the plaintiff's favor.

The defendants are furthermore affected with both actual and constructive notice of the right to which the plaintiff lays claim. Not only were they directly notified of its existence, but they could not use their eyes without having it plainly called to their attention. It was an evident servitude existing over the one building in favor of the other, and arising out of the permanent form in which the building had been constructed. They were thus put upon such inquiry as would have elucidated the facts upon which the plaintiff now justly relies, and are bound thereby.

There is no occasion for noticing specifically the exceptions taken to the report of the learned master. Those on the part of the defendants are virtually disposed of in the opinion already expressed. Of those on the part of the plaintiff, we need only say that they cannot be sustained. The matters of which they complain were correctly decided by the master.

The exceptions of both plaintiff and defendants are dismissed, and the report of the master confirmed. Let a decree be drawn in accordance with his recommendations.

—A final decree, ordering the injunction to issue as prayed for, having been entered, the defendants took this appeal specify-

Opinion of the Court.

ing that the court erred in dismissing the defendant's excep-
tions, in confirming the master's report, and in ordering the
injunction as prayed for in the plaintiff's bill.

*Mr. C. Smith* (with him *Mr. Jas. H. Torrey* and *Mr. W. H.
Jessup*), for the appellants.

Counsel cited: Rhea v. Forsyth, 37 Pa. 506 ; Insurance Co.
v. Mowery, 96 U. S. 674; Rerick v. Kern, 14 S. & R. 267 ;
Swartz v. Swartz, 4 Pa. 353 ; Huff v. McCauley, 53 Pa. 206 ;
Heyl v. Railroad Co., 51 Pa. 470 ; Mott v. Clark, 9 Pa. 404.

*Mr. Edward N. Willard* and *Mr. Everett Warren,* for the
appellee, were not heard.

Counsel cited: Hacke's App., 101 Pa. 245 ; Ferguson's
App., 117 Pa. 452; Pyer v. Carter, 1 H. & N. 916 ; Ewart v.
Cochrane, 4 McQ. 117 ; Strickler v. Todd, 10 S. & R. 63 ;
Wright v. Ore Co., 45 Pa. 475 ; Seibert v. Levans, 8 Pa. 383 ;
Kieffer v. Imhoff, 26 Pa. 438 ; McCarty v. Kitchenman, 47
Pa. 239 ; Phillips v. Phillips, 48 Pa. 178 ; Cope v. Grant, 7
Pa. 488 ; Overdeer v. Updegraff, 69 Pa. 111 ; Cannon v. Boyd,
73 Pa. 179 ; Seymour v. Lewis, 13 N. J. Eq. 439 (78 Am. Dec.
108).

PER CURIAM:

This case has been so well discussed by the learned judge of
the court below that we affirm the decree for the reasons given
by him.

> Decree affirmed, and the appeal dismissed at the
> costs of the appellants.