568 A.2d 194

Charles L. BUFFINGTON, Sr. and Ruth L. Buffington, his wife,

v.

Charles L. BUFFINGTON, Jr. and Diane Buffington, his wife, Appellants.

Superior Court of Pennsylvania.

Argued Dec. 15, 1989.

Filed Dec. 26, 1989.

Ronald R. Pellish, Pottsville, for appellants.

Fred J. Wiest, Jr., Pottsville, for appellees.

Before CAVANAUGH, McEWEN and POPOVICH, JJ.

McEWEN, Judge:

We here consider an appeal from a final decree, entered following the dismissal of appellants' exceptions to a *decree nisi,* which (1) enjoined appellants from maintaining a fence line, or any other barricade, which would prevent free access to Township Road No. 850, a gravel road abutting the appellees' premises, and (2) ordered appellants to remove a water line extending from Wildcat Creek across appellees' premises to the home of appellants. We affirm.

The underlying factual history is well mirrored by the findings of fact recounted by the distinguished Judge Wilbur H. Rubright in his able opinion:

1. Appellees, Charles L. Buffington, Sr. and Ruth L. Buffington, his wife, are adult individuals residing at R.D. 1, New Ringgold, Schuylkill County, Pennsylvania.

2. Appellants, Charles L. Buffington, Jr. and Diane Buffington, his wife, are adult individuals residing at R.D. 1, New Ringgold, Schuylkill County, Pennsylvania.

3. Appellees are the owners of a parcel of ground situate in East Brunswick Township, Schuylkill County, Pennsylvania; being 10 acres and 32 perches, having been acquired by deed dated September 23, 1968 in Deed Book 1103, page 259.

4. The appellants conveyed their undivided one-half interest in the premises referred to in Finding No. 3 by deed dated December 24, 19[70] and recorded in Deed Book 1132, page 772.

5. The common owner of the premises of the appellees and appellants first conveyed the premises now owned by the appellees in 1896 by deed recorded in Deed Book 156, page 298.

6. The description in the deeds of the appellees predecessor in title and the description in the deed into the appellees has remained substantially unchanged since the first deed out of the common owner in 1896. The description contains calls by course and distance indicating its abutment to a public road.

7. The roadway which transverses the property of the appellees and abuts the premises of the appellees and appellants is Township Road No. 850, a township road which has existed since the early 1800's.

8. The Township of East Brunswick did in fact abandon all except .4 of a mile of Township Road No. 850 where it existed in East Brunswick Township. This abandonment took place just prior to 1932.

9. Following the abandonment by the Township of East Brunswick, this township road was maintained by Atlas Powder Company as access to its plant at Reynolds and was so maintained until another entrance to the plant was constructed from Route No. 443 in West Penn Township to its plant in that township.

10. The general public used Township Road No. 850 until its abandonment and the roadway was used thereafter by the abutting landowners for necessary access to their properties....

11. That the fence as erected by appellants—confiscates a strip of land of the appellees and prohibits them free access to their property.

12. The appellants acquired title to an abutting piece of property, 1.1113 acres in size, by quit-claim from Atlas Powder Company by deed dated April 14, 1986 and recorded in Deed Book 1373, page 405.

13. The appellants erected a rail fence which encompassed the entire roadbed of the abandoned portion of the road abutting the premises of the appellants and appellees in 1986.

14. The appellants, in 1982, constructed a water line from the stream which transverses both the property of the appellees and the appellants, known as Wildcat Creek.

15. There was no written or oral agreement of any kind between the parties regarding the installation of the water line except by tacit consent of the appellees for failure to object to its construction.

Appellants contend in this appeal from the final decree that:

I. The *decree nisi* and order of court are contrary to the evidence and contrary to the weight of the evidence in that the evidence presented by the appellees failed to establish any ownership rights to the roadway of the appellants. The evidence further established that the appellants are the owners of the roadway and have exclusive ownership rights as against all other persons, including appellees.

II. Appellants acquired an easement or irrevocable license from appellees to construct a water line on the real estate of appellees.

" 'The scope of review of an appellate court in the consideration of an appeal from a final decree in an equity action is well established. A Chancellor's findings of fact are entitled to the weight of a jury verdict and will not be reversed on appeal if supported by adequate evidence. The Chancellor's findings are afforded particular weight in cases in which the credibility of witnesses must be evaluated, as the Chancellor has had the opportunity to hear their actual testimony and to observe their demeanor on the witness stand. We should not reverse on appeal unless it is evident that the lower court abused its discretion, lacked evidentiary support for its findings, or was capricious in its disbelief of evidence submitted.' " *Pirilla v. Bonucci*, 320 Pa.Super. 496, 499, 467 A.2d 821, 823 (1983), *quoting Sorokin v. Krasner*, 289 Pa.Super. 324, 327, 433 A.2d 88, 89–90 (1981) (citations omitted throughout).

We are similarly bound by the findings of the chancellor concerning the credibility of the witnesses, and the weight to be accorded their testimony. Moreover, it is not the prerogative of an appellate forum to find facts when it studies the evidence, or to substitute its judgment for that of the chancellor when it considers the conclusions reached by the chancellor from the evidence he or she found credible. *Tyler v. King*, 344 Pa.Super. 78, 96, 496 A.2d 16, 25 (1985); *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 114, 464 A.2d 1243, 1255 (1983); *Stowe v. Booker*, 284 Pa.Super. 53, 57, 424 A.2d 1388, 1390 (1981); *In*

*Interest of Black,* 273 Pa.Super. 536, 543, 417 A.2d 1178, 1182 (1980). Since there is credible evidence of record to support each of the chancellor's findings of fact, we may not disturb those findings, but are, instead bound by them.

Section 3 of the General Public Road Law, 36 P.S. § 2131,[1] authorizes owners abutting highways or streets to reclaim their former property underlying the road if and when the highway or street is abandoned. This section provides:

> § 2131. Land to revert to owners
>
> Whenever any highway, street, court, or alley, shall be vacated, or hath been vacated, by authority of law, the adjoining owner or owners shall be authorized to reclaim the same, to the centre thereof, unless the ground was originally taken in unequal proportions from the then owners thereof, and in such case, the adjoining owners shall reclaim, in the proportion contributed by such owners, or by those under whom they shall have derived their titles.

36 P.S. § 2131. *See also: Petition of Fried–El Corp.,* 81 Pa.Cmwlth. 493, 495–97, 474 A.2d 713, 715 (1984).

The first deed out of the common owner in 1896 contains calls by course and distance indicating the abutment of the original tract, which contained both appellees' and appellants' land, to a "public road." The evidence supports the finding of the court that the road was once a public road which was abandoned by the township prior to World War II. John Ketchledge who, together with his family, resided on the property for some twenty-five years between 1927 and 1952, testified:

\* \* \* \* \* \*

Q. Who abandoned it?

A. I don't know that either.

Q. Well, are you certain that other people didn't use that road?

A. Yes, when.... Before, yes, before.

---

1. Act of February 27, 1849, P.L. 90, § 3, as amended, 36 P.S. § 2131.

Q. Before?
A. Yes, all the Atlas people and other people used it.
Q. And other people?
A. Yes.
Q. So it was used by the public then?
A. Right. That's why we stopped it off, because it went through the middle of the plant.
Q. And it was used by the general public from 1927 until 1952, as far as you know?
A. Yes.

\*   \*   \*   \*   \*   \*

Q. I have one question. Mr. Ketchledge, you said that the township took care of this road until it was abandoned?
A. Right.
Q. But you do not know when it was abandoned?
A. No, both townships.
Q. Both townships took care of it?
A. West Brunswick and Walker took care of it, both of them.
Q. Now, as far as determining when it was abandoned, you don't know?
A. Not exactly, no.
Q. Not exactly. Well, would you know was it before World War II or after World War II?
A. It was before World War II.
Q. It was abandoned sometime before World War II. And up to that time the township took care of it, that's your testimony?
A. Right.
Q. And after it was abandoned, then Atlas Powder took care of it?
A. Right.

\*   \*   \*   \*   \*   \*

Since the road had been a "public road" but had been abandoned, the chancellor properly relied upon 36 P.S.

§ 2131 to determine the ownership of the roadbed. The chancellor also correctly found that the roadbed had been owned by the former common owner of the tract now comprising appellees' and appellants' properties, when he reasoned:

> the description in the deeds of the Plaintiffs' predecessor in title and the description in the deed into the Plaintiffs has remained substantially unchanged since the first deed out of the common owner in 1896.... [T]he description contains calls by course and distance indicating its abutment to a public road....
>
>    *    *    *    *    *    *
>
> [T]he roadbed was owned by the former common owner and upon his conveyance of the premises now owned by the Plaintiffs, it is presumed that with the calls in the deed abutting the Township Road, the intention was that they would convey to the center line of the road. This conveyance was subject to the right of the public user of the roadway until its abandonment.

Thus we reject appellant's argument that the 1986 deed from Atlas Powder conveyed the entire roadbed to them, and affirm that portion of the decree which enjoins appellants from interference with the free access of appellees to the roadway.

Appellants also argue that an easement by implication, or, in the alternative, an irrevocable license was granted by appellees for the construction and maintenance of a water line across the property of appellees. The record, however, precludes a finding of an easement by implication.

> To establish an easement by implication on the severance of the unity of ownership in an estate there must be (1) a separation of the title, (2) such continuous and obvious user before the separation as to show an intention to make the alleged easement permanent, (3) the easement must be necessary to the beneficial enjoyment of the land granted or retained; and (4) the servitude should be continuous and self-acting. *Becker v. Rittenhouse*, 297 Pa. 317, 325, 147 A 51.

*De Pietro, et al v. Triano, et al,* 167 Pa.Super. 29, 31–32, 74 A.2d 710, 711 (1950). The particular importance of the element of necessity in the analysis and balancing of these factors was subsequently addressed by this Court in *Potis v. Coon,* 344 Pa.Super. 443, 496 A.2d 1188 (1985):

"In the greater number of cases, *its necessity to the use of land of the claimant is the circumstance that contributes most to the implication of an easement.* If no use can be made of the land conveyed or retained without the benefit of an easement, it is assumed that the parties intend the easement to be created." Conversely, *as the degree of necessity decreases, the need to refer to other factors suggestive of an intent to create an easement increases substantially.*

*Id.,* 344 Pa.Superior Ct. at 448 n. 6, 496 A.2d at 1191 n. 6, *quoting Thomas v. Deliere,* 241 Pa.Super. 1, 4–5, 359 A.2d 398, 399–400 (1976) [emphasis added]. *Accord:* Restatement (First) Property, § 476 (1944); *Flaherty v. DeHaven,* 302 Pa.Super. 412, 418–20, 448 A.2d 1108, 1112 (1982).

■ Consideration of the first of these factors, namely, separation of title, reveals that the sole basis for the claim by appellants to ownership of the parcel which the asserted easement was meant to serve, arises from the 1986 quitclaim deed to them from Atlas Powder Company. Since then, their claim of ownership stems not from appellees, but from Atlas Powder, the unity of ownership which must necessarily precede the separation of title was not established. Since the separation of title was not established by appellants, they were necessarily unable to demonstrate the further factor of continuous and obvious use *prior* to the separation.

■ Appellants similarly failed to demonstrate the factor of necessity, namely, that the easement is necessary to beneficial enjoyment of their land. As the trial court noted, the evidence was uncontradicted, that Wildcat Creek flows in such volume through both properties as to enable appellants, as well as appellees, to benefit therefrom. Since direct access to that stream is available to appellants, they

have not demonstrated that the water line easement is necessary for their enjoyment of the property.

And, finally, the fourth factor, namely, whether the servitude has been continuing and self-acting becomes inconsequential in light of the failure of appellants to demonstrate any of the other three factors suggestive of intent, particularly, the factor of necessity.

Since appellants were unable to establish necessity, or indeed, demonstrate any of the other factors indicative of an easement by implication, they are obliged, if they are to prevail, to demonstrate with some certainty that the parties intended to create an easement. *Potis v. Coon, id.* Thus appellants also argue that the intent of the parties to create an easement was demonstrated by (1) appellees' assistance in construction of the water line, and (2) the absence of any objection by appellees to the construction. We disagree.

First, the assistance of appellees in restoring the area excavated by appellants is equivocal and does not demonstrate an intent to create an easement since appellees merely repaired the damage appellants created.[2] Second, appellee stated during cross-examination, that he did not object to appellees' activities, because he sought to effect a reconciliation between appellants and himself.[3] Thus, nei-

---

2. The activity of appellees in connection with the water line is described in appellee's cross-examination:

Q. You didn't help him install it?
A. I never touched the waterline. I helped to backfill and plant grass on it but I never touched the pipes.
Q. In other words, you did plant some grass seed over the area that was disturbed.
A. Yes.
Q. At the time the water line was installed, who did you think owned the property in which you and your wife occupy now?
A. We were, we thought we owned it.

3. Q. Is it yes or not, did you or did you not object when he placed the waterline on the property?
THE COURT: Say yes or not.
A. No.
THE COURT: Then you can give your answer.
A. No. My reason why, we were on the outs at the time and I didn't want to, I had hopes of us reconciliation and I didn't want to

ther the failure of appellees to object, nor their assistance in restoring the area excavated, manifested any intent to create an easement.

■ Finally, while the principal assertion of appellants is that an easement was created in their favor for maintenance and use of the water line through the property of appellees, they argue, in the alternative, that the license conferred upon them by appellees became irrevocable.[4] It is not disputed that appellees conferred upon appellants a license by their knowledge of and acquiescence to the construction of the water line together with their subsequent participation in the restoration of a portion of the area through which the line was constructed.[5] Our Supreme Court squarely confronted the issue of irrevocable licenses in *Bieber v. Zellner*, 421 Pa. 444, 220 A.2d 17 (1966):

> A *license* to use the promisor's land will become irrevocable for the duration of the license term when the promisee in *justifiable reliance* treats his land *in a way he would not otherwise treat it,* that is, by making expenditures of money for such changes *as would prevent his being restored to his original position.* [emphasis supplied]

throw more coals on the fire, and I left it go and I didn't say nothing about it. I left him do it.

**4.** It is well established that the existence of a parole license can be inferred from the circumstances surrounding the parties. *Baldwin v. Taylor, et al.,* 166 Pa. 507, 514, 31 A. 250, 252–53 (1895) *Accord: Pierce v. Clelland,* 133 Pa. 189, 197–99, 19 A. 352, 353 (1890); *Leininger v. Goodman,* 277 Pa. 75, 77–78, 120 A. 772, 773 (1923); *Kovach v. General Tel. Co. of Pennsylvania,* 340 Pa.Super. 144, 148–49, 489 A.2d 883, 885–86, (1985); *Dailey's Chevrolet, Inc. v. Worster Realties, Inc.,* 312 Pa.Super. 275, 458 A.2d 956 (1983), *quoting Hennebont Co. v. Kroger Co.,* 221 Pa.Super. 65, 69, 289 A.2d 229, 231 (1972).

**5.** Appellants also assert that the doctrine of equitable estoppel should be invoked in order to estop appellees from revoking the license. The doctrine of equitable estoppel is ordinarily advanced as a defense, as it is here, and as such must be raised in the pleadings under the heading of New Matter. Failure to so plead the defense of equitable estoppel constitutes a waiver of that defense. Pa.R.Civ.P. 1020, 1032. *Straup v. Times Herald,* 283 Pa.Super. 58, 68–70, 423 A.2d 713, 719 (1980). Since appellants have not complied with this rule, this claim has been waived.

*Id.,* 421 Pa. at 447, 220 A.2d at 19. That court thereby established the following conditions precedent to the irrevocability of a license, and recounted those conditions in such fashion as to indicate that each is a condition of the next. As a result, a negative resolution of any of these conditions precludes inquiry upon the remaining conditions:

Did appellants acquire a license?

Did appellants justifiably rely on the license extended them by appellees?

Did appellants treat their land in a way they would not have otherwise?

Did they do so to the extent that appellants cannot be restored to their original position?

Appellees do not dispute that appellants acquired a license. Appellees argue, however, and the trial court agreed, that the license was revocable. Thus, the first task in our inquiry is to consider whether the action taken by these licensees was in *justifiable reliance on the license.* Appellants would create this irrevocable burden on the land by arguing that construction of the water line not only conferred on them a license, but also, as well, composed the required justifiable reliance. This argument was rejected by our Supreme Court in *Bieber, supra,* where the underlying factual history mirrored that of the instant case: [6]

In this case, plaintiff did not make any oral or written representations to defendants that they would be allowed to use the roadway. Plaintiff may have been able to observe [the rendition of expenditures in reliance]. These activities were equivocal, however, and no promise should be inferred from them. Restatement, Property § 519

**6.** It is true that the would-be licensee in *Bieber* failed to establish that the landowner had observed the construction, while in the instant case it is undisputed that the appellees did observe the construction. This difference is not, however, of significant consequence since the cases are identical in certain other essential features, such as, for example, the would-be licensee did not establish (1) the duration of the construction, (2) the stage of the construction at which the landowner observed the construction, and (3) how much time intervened between that observation and the completion of the construction.

comment f (1944). Even if defendants had established that plaintiff's silence with knowledge [of the reliance] was a representation of permission to use [the license], they failed to show that they acted in reliance. Defendants argue that their construction was action in reliance. Where, as here, *both representation and reliance are sought to be proved from a single activity the silence of the plaintiff must clearly be shown to have been relied on* in the completion of that activity. Defendants did not establish that they knew plaintiff had observed the construction. They, further, did not establish that the construction was of such duration that, if they did know of plaintiff's observance, there was sufficient time after such knowledge and before completion for them to conclude permission from his silence. The doctrine, therefore, is inapplicable.

Id., 421 Pa. at 447–48, 220 A.2d at 19. [emphasis supplied].

Thus, in order to rely upon but a single circumstance to prove both the license, and also reliance on a license, the licensee must demonstrate not only that a license had been acquired, but also that reliance was *thereafter* rendered on faith of the license. Here, while the evidence indicated that appellees observed and thereby tacitly permitted appellants to construct the water line, there is no evidence to support the further factor of "justifiable reliance".[7] Appellants

---

7. Nor is our disposition of this case controlled by the decision of this court in *Kovach v. General Telephone Company of Pennsylvania,* 340 Pa.Super. 144, 489 A.2d 883 (1985):

> Licenses are ordinarily revocable at will. Pennsylvania, however, has adopted the equitable doctrine of irrevocable licenses. This doctrine, based upon the equitable principle of estoppel, recognizes that, "if a *license,* ... is given by parol, then followed *by the expenditure of money, on the faith* of the parol agreement, it is irrevocable and is treated as a binding contract." *Cole v. Ellwood Power Co.,* 216 Pa. 283, 289, 65 A. 678, 680 (1907). *See also Dailey's Chevrolet v. Worster Realties, Inc., supra; Harkins v. Zamichieli,* 266 Pa.Super. 401, 405 A.2d 495 (1979). [emphasis supplied]

*Id.* 340 Pa.Super. at 148–49, 489 A.2d at 885.

The compelling feature of Kovach was the undisputed oral permission granted the licensee by the landowner, a factor conspicuously absent here. Moreover, the instant case differs from Kovach in further important factors: ·

have not specifically established the required justifiable reliance since the record is devoid of any testimony or other evidence concerning (1) the duration of the construction effort, in hours or days, since appellant husband testified that he performed all the labor, (2) the complexity of that effort, since appellant indicated only that he used a backhoe, (3) the precise dollar cost of the effort,[8] (4) at what stage of the construction appellees first observed the construction, (5) through what stage appellees observed the construction, and (6) at what point appellants concluded the permission from appellees was complete. Moreover, a license acquired by silent acquiescence can come into existence only when the intrusion of the would-be licensee is completed and the intruder is no longer susceptible to ejection by the landowner. Thus, the license upon which appellants rely did not become viable until completion of the water line construction, as well as the backfilling and replanting effort in which both appellants and appellees engaged. Since the notion of justifiable reliance implicitly requires a viable license, since the license only became viable upon completion of the entire construction, backfilling and planting efforts, and since appellants do not claim any act of justifiable reliance other than the entire construc-

> The license in Kovach was acquired by the licensee prior to the time that the licensee commenced the expenditures.
> The licensee in Kovach had expended an unquestionably large sum of money in constructing radio transmission lines.
>
> Therefore, it was unnecessary for the Kovach court to weigh and to balance the elements of justifiable reliance, actual reliance, and detrimental reliance. Thus, the assertion that *any* expenditure of money causes a license to become irrevocable is without foundation.

**8.** The evidence indicating the alleged actions in detrimental reliance was wholly provided by the testimony of appellant:

> Q. Now, did you have any expense in putting the waterline in?
> A. Yes.
> Q. And do you know how much it cost you to put the waterline in?
> A. Offhand I couldn't tell you. I had a backhoe in to dig it, I had to buy the plastic pipe. I couldn't tell you offhand.
> Q. Did you perform the labor yourself?
> A. Yes.
> Q. But you had to hire a backhoe to put the pipe in?
> A. Yes.

tion effort, their argument that the construction also composed the reliance is seen to be circular.[9]

Our Supreme Court in *Bieber, supra,* indicated that the licensee must meet each element as a condition precedent, and since, as we have seen, appellants have not demonstrated the required justifiable reliance, any discussion concerning the remaining conditions is unnecessary. Nonetheless, the record is devoid of evidence concerning the manner in which appellants treated their land in a way they would not have otherwise, other than the aforementioned imprecise testimony of appellant husband that he did the labor and hired a backhoe. Thus, the same failure of proof which refuted appellants' claim of justifiable reliance, defeats their argument of actual reliance.

█ Nor have appellants, by reason of the same evidentiary deficiencies already recounted in our rejection of the argument of justifiable reliance, established the required detrimental reliance, namely, evidence of obstacles which preclude a restoration to their original position—indeed, it does not seem likely that appellants could demonstrate such detriment since they have direct access to a sufficient supply of water from Wildcat Creek. And, finally, it merits mention that our courts have declined to weigh the element of detrimental reliance when a licensee has derived more value in benefits from use of the license than he has expended in reliance on the license. *See: Baldwin v. Taylor, et al,* 166 Pa. 507, 512, 31 A. 250, 252 (1895). Thus, if appellants intended to prove impossibility of restoration, appellants were required—but failed—to demonstrate that the expenditures rendered in reliance outweigh the benefits derived from the use of the license. *See: Baldwin v. Taylor, et al, supra; Thompson v. McElarney,* 82 Pa. 174, 133 A. 199 (1876); *Dark v. Johnston,* 55 Pa. 164, 93 A. 932 (1867); *Huff v. McCauley,* 53 Pa. 206, 91 A. 203 (1866).

9. "I would not have made these expenditures, had you not given me the license, and, of course, I would not have the license, had I not made the expenditures", Alice might well have said through Mr. Carroll.

Thus, we also affirm that portion of the decree which declares that appellants are without right to maintain a water line through the property of appellees. We remand, however, to the trial court so as to enable that court to determine whether removal of the water line is the most efficacious method of enforcing the rights of appellees and precluding use of the line by appellants.

Decree affirmed. Case remanded. Jurisdiction relinquished.