J-A03043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROGER C. VISCARELLO & LAURA A. VISCARELLO, H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| THOMAS M. ELLIOTT, CRAIG A. BRENNAN AND KELLY A. ELLIOTT | |
| Appellees | No. 801 MDA 2014 |

Appeal from the Judgment Entered April 16, 2014
In the Court of Common Pleas of Bradford County
Civil Division at No(s): 2011 EQ 000377

BEFORE: MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:          **FILED NOVEMBER 25, 2015**

Appellants, Roger C. Viscarello and Laura A. Viscarello, appeal from the April 16, 2014 judgment entered in the Bradford County Court of Common Pleas, denying their request for a permanent injunction to enjoin Appellees, Thomas M. Elliott, Craig A. Brennan, and Kelly A. Elliott, from blocking the Viscarellos' access to a roadway across Appellees' land. After careful review, we affirm.

The trial court detailed the facts of this case as follows.

> In this action [the Viscarellos] claim the right to make permanent use of a roadway approximately [100] feet in length over lands of [Appellees]. The road leads from a public road on [Appellees']

---

[*] Former Justice specially assigned to the Superior Court.

property to [the Viscarellos'] residential structure, referred to as a hunting cabin, on [the Viscarellos'] property.

…

[The Viscarellos] are husband and wife who have a primary residence out of the Bradford County area. In 2001, they bought a tract of land in Bradford County consisting of [228] acres. This tract adjoined lands owned by [Appellee] Thomas M. Elliott and had extensive public roadway frontage. Following [the Viscarellos'] purchase of the Bradford County tract, they became friendly neighbors with Mr. Elliott, occasionally visiting each other, engaging in some mutual help with tasks on their respective properties and cooperating in agricultural efforts, including raising crops to benefit the deer herd in the locality. Over the next several years, [the Viscarellos] sold off several tracts from their [228] acre parcel including the house that had existed on the premises at the time the [228] acres was [sic] purchased by [the Viscarellos].

Today [the Viscarellos] own [157¼] acres consisting of three lots …. Each lot does adjoin at least one public road. At an unspecified point in time, but prior to 2005, [the Viscarellos] formed a desire to build a new "hunting cabin" on their remaining land. They selected a site that would not have access to a public road except by crossing Brown's Creek, a small stream that flows through [the Viscarellos'] property. Throughout the course of a year, this stream varies in width and depth. In summer it is nearly dried up but at other times may be many feet deep and quite wide after heavy rains. Occasionally it has flooded.

The easiest and shortest access from a public road to the site where [the Viscarellos] had determined to build their hunting cabin was over a strip of land owned by [] Mr. Elliott, approximately [100] feet in width between [the Viscarellos'] property and a public road. By using this strip of

land as a roadway it is not necessary to cross Brown's Creek to access the hunting cabin.

Before [the Viscarellos] started to construct their hunting cabin, following a barbeque gathering, [] Roger Viscarello and [] Thomas Elliott were walking near the area of [the Viscarellos'] desired access and location where the hunting cabin was to be built. Mr. Viscarello explained to Mr. Elliott his desire to build a cabin at that site and asked for permission to cross the distance of [100] feet over Mr. Elliott's property. The conversation, according to Mr. Viscarello, went this way.

> Well I told him that there was no way to get across Brown's Creek and I had always wanted to have a cabin up on the hill. But my survey showed that he owned a small portion and I asked if I could buy the property, a right-of-way first. And he didn't want to do that. And then he – I asked if I could buy an acre or whatever that small amount might be, just so it was clear on – the survey that it was all ours. And he explained that he didn't want to sell any of his land, that he was gonna own as much land as he could own. And he said you know, you and your family are nice people. Your friends are nice people. You can come and go as you please. And I did that another time where I went out to – he was planting his corn field. And I went out on the farm and asked him again if I could buy a right-of-way. And he didn't want to do that, but he assured me that it would be okay; we would pass by there and build everything.

N.T., 3/27/12[,] [at] 15.

…

Mr. Elliott recalled having the same kind of conversations with Mr. Viscarello and testified specifically as follows:

Yes, the first that I recall was at the cookout barbeque, call it what you will. Roger and I were – I assume after we ate, were walking across the covered bridge. And he was telling about the – this is what I remember, wanting to build a cabin or whatever it was. And I told him – I said that he could – he could – he could go ahead and use it. I – and I may well have said his family or friends or what have you. That I do not specifically recall. He may go ahead and use it, but I was not going to do anything permanent, because if he got hit by a bus tomorrow and then the Philadelphia Four Wheeler Club ends up with it, I could spend the rest of my life chasing four wheelers off from the fields up on the hill. At which time, I remember him assuring me saying that if something happens to him it would be his son's property thereafter so that would not be a problem. So I countered and said: "Well if I get hit by a – by a bus tomorrow, the next guy might want something different.["]

[*Id.* at 40-41.]

In addition, Mr. Elliott also testified in follow up questioning as follows:

"Q. But is it fair to say that you didn't give any indefinite use or anything like that?

A. I compare it to allowing somebody to go hunting. Just because I said you could go hunting today, if I'm not satisfied with something you did or didn't do, you might not be able to go hunting next time.

Q. And did there come a time that you, in fact, rescinded the temporary use of – of that portion of your property from the plaintiffs in this case?

A. Yes …."

- 4 -

[*Id.* at 41.]

These two statements are remarkably similar and each supplies different details as the conversations about the roadway. Neither party testified that the other party's recollection of this conversation was in error. We find no inconsistencies in the quoted testimony of Mr. Viscarello and Mr. Elliott and accept each statement as credible.

The Viscarellos did construct a residential structure at the proposed site at a cost of approximately [$300,000.00] during the year 2005 thr[ough] 2006. To construct this residence, called the hunting cabin, [the Viscarellos] first constructed a roadway which is now the focus of this dispute. It crosses 100 feet of [Appellees'] land. [The Viscarellos] and their construction crew used it to bring in construction supplies to the hunting cabin site. Both [] Mr. Elliot and [] Mr. Brennan did work in connection with the Viscarello residence construction including excavating and landscaping type work. [Appellees] were fully aware as to the extent and nature of the construction being undertaken by the [the Viscarellos] although there is no testimony to support that they had actual knowledge of the cost of the construction. Nevertheless, [Appellees] would have recognized that a substantial expenditure was being made by the [Viscarellos] in constructing the residence.

At some point thereafter, Mr. Elliott added the names of the other [Appellees], his niece Kelly A. Elliott, and her husband Craig A. Brennan to his deed as property owners of his ground.

In 2007-08, [] Mr. Brennan had a conflict with one of the guests of [the Viscarellos] over the way he was making use of the [100] foot long roadway that crossed [Appellees'] land. Other disputes seemed to arise between the parties from time to time and on May 1, 2011, blaming the manner in which [the Viscarellos] were using the driveway over

- 5 -

[Appellees'] land, [Appellees] blocked the roadway by dumping a pile of dirt upon it. Since May of 2011, [Appellees] have maintained that [the Viscarellos] have no right to use the roadway.

Since May of 2011, [the Viscarellos] have made use of their property and hunting cabin, for hunting and other recreational uses typically associated with a second or vacation home. [The Viscarellos] in doing so have accessed the hunting cabin from the public road by crossing Brown's Creek, with minimal interference by the water level in Brown's Creek. The nature of Brown's Creek, however does impact access of their property and the access that [the Viscarellos] do have to their property makes it very difficult, if not impossible for utility service vehicles to access the hunting cabin. There have only [been] a few times that Brown's Creek could not be forded by [the Viscarellos'] vehicles. [The Viscarellos] have constructed a foot bridge across Brown's Creek.

Trial Court Opinion, 5/8/14,[1] at 1, 3-6.

The trial court further summarized the procedural posture of this case as follows.

This action was commenced by the filing of a complaint and a motion for a preliminary [in]junction on October 14, 2011, after [Appellees] had blocked [the Viscarellos] from using the roadway by barricading it with a pile of dirt on May 1, 2011. [In response, Appellees asserted a counterclaim for ejectment and trespass.]

A hearing on [the Viscarellos'] preliminary injunction motion was held before the [trial court] on

_____

[1] While the trial court opinion is dated April 14, 2014, it was filed on May 8, 2014.

March 22, 2012. On … March 28, 2012, [the trial court] denied the [Viscarellos'] motion for preliminary injunction. …

…

Thereafter, the [trial court] … denied [the Viscarellos] motion for summary judgment.

The request of [the Viscarellos] for a permanent injunction case came to trial before [the trial] [c]ourt on November 15, 2013. At the commencement of the proceedings it was determined that the record upon which [the trial] [c]ourt was to base its decision would include the transcript of the proceedings held at the preliminary injunction hearing on March 27, 2012, … together with other testimony to be introduced at the November 15th, 2013, proceeding, as well as various exhibits introduced at each hearing. At the November 15th hearing, testimony was received from [] Roger C. Viscarello, first as on cross examination and then on direct and from [] Craig A. Brennan. Several exhibits were introduced into the record at that time. [A]t the March 27, 2012[] proceeding[,] testimony was received from [both] Roger and Laura Viscarello, and from [] Thomas M. Elliott[] and Craig A. Brennan.

*Id.* at 1-2.

Immediately following the November 15, 2013 bench trial, the trial court entered an order denying the Viscarellos' request for a permanent injunction. On November 18, 2013, the trial court amended its order to grant Appellees' counterclaim, and consequently ejected the Viscarellos' from Appellees' property and prohibited them from trespassing in the future. On November 25, 2013, the Viscarellos filed a motion for post-trial relief. The trial court denied the post-trial motion on April 16, 2014, and entered

judgment on the same date.[2]  On May 2, 2014, the Viscarellos filed a timely notice of appeal.  Appellants timely complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[3]  The trial court filed a Rule 1925(a) opinion, which incorporated its May 8, 2014 opinion in support of denying post-trial motions.

On appeal, the Viscarellos present the following issue.

> Whether an oral license given by one party to another to use a 100 foot private road from a public road to the other party's boundary line for the purpose of constructing a residence and thereafter accessing it, which license was thereafter executed by the expenditure of $300,000 to build the

---

[2] We note that the trial court disposed of the post-trial motion more than 120 days after it was filed on November 25, 2013.  *See* Pa.R.C.P. 227.4(b) (providing that judgment may be entered upon praecipe of party if the trial court does not decide post-trial motions within 120 days of their filing date). However, any appeal prior to the entry of judgment would have been premature.  *See Sagamore Estates Prop. Owners Ass'n v. Sklar*, 81 A.3d 981, 983 n.3 (Pa. Super. 2013) (noting that the entry of judgment perfects appellate jurisdiction).

[3] We note that the Viscarellos' Rule 1925(b) statement is not concise, as it consists of nine, single-spaced pages and includes a recitation of the facts and a lengthy discussion of the law.  The Viscarellos' nine, numbered issues span seven pages, and are followed by an unnumbered two-page section, entitled "discussion."  However, the trial court did not find that the Viscarellos filed the statement in bad faith, so we cannot find waiver.  *See PHH Mortg. Corp. v. Powell*, 100 A.3d 611, 614 (Pa. Super. 2014) (concluding that this Court cannot find waiver based on the length of the appellant's Rule 1925(b) statement unless the trial court finds that the appellant acted in bad faith), *citing Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417 (Pa. 2007).

> residence, may thereafter be revoked by the [l]icensor?

Viscarellos' Brief at 2.

Specifically, the Viscarellos' argue that the trial court erred in denying them injunctive relief in the form of permanent use of the roadway over Appellees' land. *Id.* at 17. The Viscarellos assert that their discussions with Mr. Elliot resulted in his grant of a temporary license to use his roadway to access their property. *Id.* Citing the "doctrine of irrevocable license," the Viscarellos further contend that the temporary license to use the roadway to access their property became irrevocable when they expended money on a permanent improvement, in the form of a hunting cabin, in reliance on the permission to use the roadway. *Id.* at 17-18.

Our review of a trial court's denial of permanent injunctive relief is guided by the following principles.

> To prevail in a claim for a permanent injunction, the plaintiff must prove a "clear right to relief." The injury claimed must be one that cannot be compensated by an award of damages. However, in contrast to a preliminary injunction, a permanent injunction does not require a showing of irreparable harm or the need for immediate relief. Rather, the plaintiff must show that an actual and substantial injury has occurred and/or is threatened in the future. As our Supreme Court has summarized, a permanent injunction is appropriately "awarded to prevent a legal wrong for which there is no adequate redress at law."
>
> Appellate review of the grant or denial of a permanent injunction is limited to determining whether the trial court committed an error of law. In

reviewing a question of law, our standard of review is de novo and our scope is plenary.

*WellSpan Health v. Bayliss*, 869 A.2d 990, 995-996 (Pa. Super. 2005) (footnote and citations omitted), *quoting* *Buffalo Twp. v. Jones*, 813 A.2d 659, 663 (Pa. 2002), *cert. denied*, 540 U.S. 821 (2003).

Accordingly, to obtain relief on appeal, the Viscarellos must demonstrate the trial court erred when it concluded that the doctrine of irrevocable license did not prevent Appellees from revoking the license for the roadway. Generally, a license is a personal permission to use the land of another for a particular purpose, and it is revocable at will. *Morning Call, Inc. v. Bell Atl.-Pa., Inc.*, 761 A.2d 139, 144 (Pa. Super. 2000). A license is not a property interest, and it is automatically extinguished by the sale of the burdened property. *Id.* However, our Supreme Court has explained that the rules of estoppel may convert a temporary license into an irrevocable one.

> A license to use the promisor's land will become irrevocable for the duration of the license term when the promisee in justifiable reliance treats his land in a way he would not otherwise treat it, that is, by making expenditures of money for such changes as would prevent his being restored to his original position.

*Bieber v. Zellner*, 220 A.2d 17, 19 (Pa. 1966). This Court has observed that, as an equitable doctrine, the party claiming that the license has become irrevocable must demonstrate justifiable reliance on the permanency of the license. *Buffington v. Buffington*, 568 A.2d 194, 200

- 10 -

(Pa. Super. 1989); *accord* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.10 (2000) (requiring the user to substantially change position in "reasonable reliance" on the belief that the permission would not be revoked). Implied in this doctrine is an assumption that the grantor did not expressly retain the ability to revoke the permission granted, and instead misled the licensee to believe that the licensor would not revoke the permission. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.10 cmt. e (2000).

Herein, Mr. Elliott granted a revocable license to the Viscarellos, permitting the Viscarellos to use a 100-foot roadway over his land. The trial court found, based on the credible testimony of both parties, that Mr. Viscarello and Mr. Elliott orally created a license with the understanding that Mr. Elliott would retain the right to revoke his permission for the Viscarellos to use his land as a roadway. Trial Court Opinion, 5/8/14, at 8. Specifically, Mr. Viscarello testified that Mr. Elliott consistently rebuffed his attempts to acquire a permanent interest in Mr. Elliott's property as access for a future hunting cabin. N.T., 3/27/12, at 15. Further, Mr. Viscarello admitted Mr. Elliott explicitly told him on at least two separate occasions that he would not sell him a permanent interest in the land in the form of fee simple ownership, easement, or right-of-way. *Id.* at 29. Similarly, Mr. Elliott testified that the agreement was for the temporary use of the land to enable the Viscarellos to construct the cabin. *Id.* at 40-41. Therefore, the

undisputed specific intent and understanding of the parties was that Mr. Elliott granted the Viscarellos only a temporary, revocable license to traverse Mr. Elliott's land, which would not run with the land.[4]

After Mr. Elliott revoked the Viscarellos' privilege to use the driveway by blocking it with a pile of dirt in May 2011, the Viscarellos initiated this action claiming that the license became irrevocable when they expended money to construct the hunting cabin. Appellant's Brief at 16-17. In effect, the Viscarellos attempt to invoke rules of estoppel to obtain, as a matter of law, a servitude on the property that the parties specifically contemplated and rejected. We conclude the doctrine of irrevocable license does not apply in these circumstances.

The Viscarellos' belief that Mr. Elliott would not revoke the permission was not reasonable, and the Viscarellos were not justified in relying on that belief. Mr. Elliott unequivocally expressed that the license was not permanent. Mr. Viscarello specifically attempted to obtain a fee simple, an easement, or a right-of-way in the property, but Mr. Elliott twice refused to grant any such permanent servitude. Instead, Mr. Elliott granted the Viscarellos a temporary license to traverse his land to access the Viscarellos'

---

[4] Conversely, Mr. Viscarello testified that he had to obtain an easement from Mr. Elliott in favor of Pennsylvania Electric Company to enable electric service at the Viscarellos' hunting cabin. N.T., 3/27/12, at 23 (acknowledging electricity would not have been possible without the easement); *Id.* at Exhibit 5 (Penelec Easement, 6/2/05).

property. Mr. Viscarello did not testify or argue that he believed that the license was irrevocable or that Mr. Elliott made any representation to that effect. Given the negotiations between the parties and the terms of their agreement, we conclude that the Viscarellos did not show justifiable reliance on the permanency of the license because they did not show that Mr. Elliott led them to believe the license would not be revoked. **See Buffington**, **supra**; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.10 cmt. e (2000).

Despite this, the Viscarellos argue that Appellees were equitably estopped from revoking the license because Mr. Elliott was aware of the construction of the hunting cabin, Mr. Elliott assisted in the construction, and the Viscarellos expended $300,000.00 on the cabin's construction. Appellant's Brief at 16-17. However, both parties affirmatively testified Mr. Elliott had knowledge of the Viscarellos' plans to build a cabin before Mr. Elliott granted the revocable license to use the roadway. N.T., 3/27/12, at 15, 40. Further, both parties testified that Mr. Elliott steadfastly refused to grant or sell the Viscarellos a more permanent interest in the land. **Id.** at 15, 29, 40-41. Consequently, the Viscarellos cannot claim Mr. Elliott is estopped based on Mr. Elliott's assistance in the construction because the assistance was not a change in Mr. Elliott's position that would warrant justifiable reliance; Mr. Elliott already knew a structure was going to be erected when he granted the revocable license.

For the same reason, the Viscarello's expenditure of $300,000.00 on the cabin does not equitably estop Mr. Elliott from revoking the license. The Viscarellos knew that Mr. Elliott did not grant them a permanent, lasting servitude. Nevertheless, the Viscarellos decided to construct the cabin without a permanent roadway over Mr. Elliott's property to access it. Under these facts, the Viscarellos cannot unilaterally invoke equitable estoppel to obtain an interest in Appellee's land greater than the one Mr. Elliott expressly granted to them in the parties' oral agreement.[5]

Further, the Viscarellos did not prove that the revocation of the license rendered the improvements on their property useless. The roadway over Appellees' property was not the only way for the Viscarellos to access their property from a public road; it was the most convenient and least expensive route for them. The Viscarellos conceded that they could access the property by crossing Brown's Creek, but it would be difficult for service utility vehicles to cross the stream without further improvements. Trial Court Opinion, 5/8/14, at 6. Mr. Viscarello testified that while he was aware

---

[5] An irrevocable license is tantamount to an affirmative easement. **Morning Call**, **supra** at 144 n.10; **see also** RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2(4) cmt. e (2000) (stating "the term 'easement' includes an irrevocable license to enter and use land in the possession of another …[]"); **id.** § 1.2 cmt. g (explaining "[i]f the license becomes irrevocable … it is indistinguishable from an easement[]"). The testimony of the parties established that Mr. Elliott definitively refused to grant the Viscarellos a right-of-way or an easement on his property for a driveway. Under these circumstances, we will not impose an affirmative easement by operation of law.

of the general procedure for constructing a bridge to enable vehicles to cross Brown's Creek, he had not initiated the process. N.T., 3/27/12, at 27. The Viscarellos, however, have constructed a footbridge across the stream. Trial Court Opinion, 5/8/14, at 6. Mr. Elliott testified that the Viscarellos also could access the cabin by obtaining a right-of-way over the property of another neighbor, Howard Bailey. N.T., 1/4/13, at 44. Thus, while access over Appellee's land may have been the shortest and least expensive of the alternatives available, it was not the Viscarellos' only means of accessing the hunting cabin. In fact, since Appellees blocked the roadway in May 2011, the Viscarellos have accessed their cabin by crossing Brown's Creek. Trial Court Opinion, 5/8/14, at 6. Therefore, Appellees' revocation of the license did not render the Viscarellos' improvements useless.

Moreover, the Viscarellos' invitation to apply equitable estoppel to convert an explicitly temporary license into a permanent servitude has a chilling effect on the spirit of neighborly cooperation. In this case, the Viscarellos resorted to the legal system to obtain a greater interest in Appellees' property than they could obtain through negotiations with Mr. Elliott. Such a loose application of estoppel principles to circumvent the express agreement of the parties discourages landowners from allowing neighbors to use their land for fear that a court will convert a temporary permission into a permanent easement.

Based on the foregoing, the Viscarellos did not prove they had a clear right to relief based on the equitable doctrine of irrevocable license. Therefore, the trial court did not err as a matter of law in denying the Viscarellos' request for a permanent injunction. Accordingly, the April 16, 2014 judgment is affirmed.

Judgment affirmed.

Judge Stabile joins the memorandum.

Justice Fitzgerald files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2015